HON. D. M. VALENTINE, } ASSOCIATE JUSTICES.
HON. D. J. BREWER,

## RUTH AND KING v. GEORGE FORD, et al.

1. FINDINGS OF FACT—*Evidence; Practice.* Where an action has been tried before a referee, upon oral as well as written evidence, and there is some evidence to sustain every material finding of the referee, the supreme court will not set aside the report of the referee and the judgment of the district court founded thereon, and grant a new trial because a bare preponderance of the evidence seems to be against some of the findings of the referee.

2. DEED—*Consideration.* It is not necessary, in this state, that a deed of conveyance shall state or express a consideration therefor, whether such deed be under seal or not. If in form it be a conveyance, and is duly *signed* by the grantor, it imports a consideration.

3. PURCHASERS, *in Good Faith.* The rule that a party receiving property in payment of a pre-existing debt is not a *bona fide* purchaser, is applied only where the property is purchased from some person who is apparently the owner, but who is not in fact, or not in law or equity the real owner, and such rule is never applied where the property is purchased in good faith from the real and exclusive owner, although the same may be paid for by the relinquishment of a pre-existing debt.

4. WITNESSES—*Husband and Wife.* In an action where a husband and wife, together with other persons, have been made parties, and in which the judgment may be rendered for or against any one or more of the plaintiffs, and for or against one or more of the defendants, both the husband and wife are competent witnesses for or against any one or more of either the plaintiffs or defendants, except for or against each other.

2

*Error from Douglas District Court.*

THE action below was commenced by *Isaac M. Ruth* against George Ford, Rachael H. Ford, Witter S. McCurdy, Gurdon Grovenor, and Wyllys King. The object of the action was to establish *Ruth's* title to the undivided half of a certain thirty-acre tract of land. *King* answered, and by a cross-petition against his co-defendants set up title in himself to the undivided half of twenty acres of said land. Both *Ruth* and *King* alleged that by reason of certain deeds of convey-ance the legal title to said lands was in the other defendants, and that said deeds were fraudulent and void. The other defendants answered denying the allegations of *Ruth's* petition and *King's* cross-petition. The case was referred to T. C. S., who reported that at the commencement of the action the legal and equitable title to the west ten acres was in *Ruth*, and the legal and equitable title to the remaining portion was in the defendant *Grovenor*. Both *Ruth* and *King* moved to set the report aside and for a new trial, which motion was overruled, and judgment was entered on the report at the July Term 1869. *Ruth* and *King* unite as plaintiffs in error, and bring the case to this court. The facts are fully stated in the opinion.

*Wilson Shannon*, and *John Hutchings*, for plaintiffs in error:

1. The referee erred in receiving the testimony of George Ford, the husband of Rachael H. Ford. Ford was not a com-petent witness. "A husband cannot be a witness for or against his wife in a question touching her separate real estate, even though there are other parties in respect of whom he would be competent." And this seems to be true even when she simply has an interest involved in the suit, and is not a party to the record. 1 Green. Ev., § 341. And our statute does not change this rule in regard to husbands and wives.

2. Admitting Ford's testimony, there was a total failure of proof of the existence of the pretended deed back to Snyder for the forty acres, or of its contents. In cases of the alleged

loss of a deed, the law requires the greatest exactitude of proof. It requires incontrovertible evidence of the existence of the instrument; of its execution and delivery. 28 Barb., 543; 1 Peters, 591; 3 Comst., 424; 2 Root, 199; 17 Wend., 237; 18 Barb., 203.

3. Even if the deed had been proved, it was fraudulent and void, being voluntary, and without consideration, and made expressly to avoid creditors. And several of the deeds in evidence were void because they expressed no consideration upon their face. To sustain a deed of bargain and sale requires a pecuniary consideration. 2 Washb. on Real Prop., 613; 1 Cowen, 622; 6 N. Y., 342; 13 Barb., 173.

4. The deed from Mrs. Ford and husband to Grovenor, dated July 20th 1865, was a mere quit-claim, purporting to convey the middle twenty acres, and was void for reasons above stated. Grovenor was a *bona fide* purchaser for a valuable consideration. To support a plea of *bona fide* purchaser, without notice, so as to entitle the party to relief against a conveyance alleged to be fraudulent, the party must aver and prove, not only that he had no notice of the rights of the other party before his purchase, but that he had actually paid the purchase money before such notice. Though he *secured* the purchase money, yet if he had not in fact paid it before notice, it would not be sufficient to sustain the character of *bona fide* purchaser for a valuable consideration. 7 Johns. Ch., 65; 1 Cowen, 622; Willard's Eq., 256; 10 Paige, 180. But Grovenor had notice of the deed from Snyder and wife to Ford and Ruth. The parties had placed it on record the day it was executed, and had thus done all they could do or that the law required them to do in the premises. The burning or destruction of that record afterward could not in any way have affected the rights of the grantee. 19 Ill., 496; 22 Pick., 85; 2 Root, 298.

5. The referee's finding that Ford and Ruth conveyed the said premises back to Snyder upon the consideration of the cancellation of the mortgage and the reconveyance on that day by said Snyder to said Ruth of the west ten acres, was

entirely without evidence to support it. And the same is true as regards the finding that Snyder's conveyance of the middle twenty acres to Fillmore and Rachael H. Ford was made in good faith.

6. The findings that the sale and conveyance from Mrs. Ford and husband to Grovenor for his promissory note, were *bona fide*, and vested a good title in Grovenor against the plaintiffs in error, were wholly unsupported by the evidence in the case, and contrary to law.

*Thacher & Banks*, for defendants in error:

1. Ruth has no ground of complaint. He made partition by parol, executed his part thereof by conveyance, and received the deed of Snyder under which he has claimed the land, gave a mortgage back for the purchase money to Snyder, and afterwards paid the same, and now has the decree of the court confirming his title.

2. King has no title upon which he can ask the interference of the court. He purchased at sheriff sale in February, 1860, and the proceedings were irregular and void. No order was entered "that the court is satisfied of the legality of the sale." And the person who made the deed had no authority to execute it. No public officer can sell and convey a good title to the land of another unless authorized so to do by express law, and the person invested with such power must pursue with precision the course prescribed by law or his act will be void. 7 Hill, 431; 6 Wheaton, 120; 3 Comst., 402.

3. A precedent debt constitutes a valid consideration for a conveyance: 21 Indiana, 137. A deed expressing the consideration of "value received," held sufficient. So, for "money received." So, for a competent sum of money, without mentioning the sum. 3 Johns., 492. And our statute, (Comp. Laws 1862, ch. 38, § 6,) is conclusive that no consideration need be expressed in the deed.

4. Ford was a competent witness. He was called not in behalf nor against his wife, but in behalf of defendants Grove-

nor and McCurdy. By joining Ford and wife as parties the plaintiff could not deprive these other persons of the right to use his testimony in a proceeding to set aside their conveyance. 29 Ind., 570, 398.

5. There was testimony to sustain every finding of fact, and the facts found sustain the conclusions of law. There is no error in the referee's report.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the plaintiff in error, Isaac M. Ruth, for the purpose of having certain deeds of conveyance declared fraudulent and void, and to have determined who was the owner in law and equity of a certain piece of land covered by said deeds. The whole tract consisted of forty acres, but only the west three-fourths was in dispute. The action was tried by a referee, and the report of the referee and the judgment of the court gave the west ten acres of said tract to said Ruth, and the middle twenty acres to Gurdon Grovenor, one of the defendants below and one of the defendants in error. The east ten acres were not in dispute, but such tract belonged to the heirs of S. S. Snyder deceased.

It is difficult to see why Ruth should complain of the judgment of the court below, or why he should unite with King in bringing the case to this court. He got everything in the court below that he had any right in justice or equity to claim, even if everything that he stated in his petition below was true; and neither the evidence nor the report of the referee made any better case for him than he made for himself in his petition. Whatever errors there may have been committed by either the court or the referee, were, so far as they affected Ruth, immaterial and unsubstantial, and will not therefore be considered by this court.

With King, the other plaintiff in error, it is different. He got nothing by the judgment of the court below. And therefore we are not surprised that he should complain. If any error was committed in the court below affecting his sub-

stantial rights, he of course has a right to ask that the same be corrected. He does not however seem to complain of the judgment as rendered between himself and Ruth, for he associated Ruth with himself in his petition in error; but he does complain of the judgment as rendered between himself and Grovenor and the other defendants in error. We suppose it will be conceded that he cannot complain because the property was given by the judgment to Grovenor, instead of to one of the other defendants in error, or to Ruth; but he can complain only because the property was not given to himself. In other words, if it was legally shown that *he* had no right to the property he cannot complain of any disposition that the court made or might have made of the same.

We suppose it will hardly be questioned that the findings of the referee are sufficient to sustain the judgment rendered thereon; but it is claimed (and we think with very good reason as to some of the findings,) that the findings are not sustained by the weight of the evidence. It is also claimed that the referee erred in receiving a certain portion of the evidence.

The facts of this case present some strange transactions. S. S. Snyder was the patentee of the said forty-acre tract of land. On the 28th of July 1858, he and his wife conveyed by warranty deed, the same to George Ford and Isaac M. Ruth, and took a mortgage back for the same from them to secure the payment of $1,000, a part of the purchase money. The deed was recorded in the Pawnee District Recorder's Office July 28th 1858, and in the Douglas county register's office August 18th 1868. The mortgage was recorded August 3d 1858 in the register's office. Afterwards, sometime in 1858 or 1859, a parol agreement or arrangement was made between Ford and Ruth and Snyder whereby Snyder was to have the east ten acres of said tract, Ford the middle twenty, and Ruth the west ten acres. On July 13th 1859, as the referee finds, Ford and wife and Ruth conveyed back by deed the west thirty acres of said tract to said Snyder. This deed was proved by parol testimony, the

*Statement of facts.*

same having been lost or destroyed, if it ever had any exist-
ence. There was no evidence of its ever having been re-
corded. On the same day, July 13th 1859, Snyder and wife
conveyed by warranty deed the west ten acres of said tract
to said Ruth, and about this time Ruth mortgaged the same
back to Snyder to secure the payment of $400 of the purchase
money. Said deed from Snyder to Ruth was acknowledged
July 30th 1859, and recorded August 4th 1859. On July
21st 1859 said Ford and Ruth conveyed by quit-claim deed
the middle twenty acres of said tract to Lemuel Fillmore the
husband of Ford's adopted daughter, and to Rachael H. Ford
the wife of said Ford. This deed was acknowledged on the
same day before said Fillmore, one of the *grantees*, he being
a notary public; and it was never recorded. On the next
day, July 22d 1859, Snyder and wife conveyed by warranty
deed the middle twenty acres of said tract to said Fillmore and
Rachael H. Ford. This deed was recorded on the same day
that it was executed. On July 25th 1859, Ruth, and Ford
and wife, conveyed by quit-claim deed the east ten acres of
said tract to said Snyder. This deed was recorded August
11th 1859. On the same day, July 25th 1859, Ford con-
veyed by deed of assignment a large portion if not all of his
property to his said son-in-law, Fillmore, for the benefit of
his (Ford's) creditors, among which were Doan, King & Co.,
whom Ford owed about $1200. This assignment was recorded
the same day. On October 15th 1859 judgment was rendered
in the district court of Douglas county in favor of Doan,
King & Co., and against Ford for the sum of $1,284.29 and
costs; and on December 16th 1859 an execution was issued
on said judgment and levied on the undivided-half of the
middle twenty acres of said tract, and on the 6th of February
1860 the same was sold at sheriff sale to said Doan, King &
Co., who purchased the same with notice of the rights of the
other parties, and in May 1860 this sale was confirmed by the
court. On May 12th 1860 Fillmore and wife conveyed by
quit-claim deed the middle twenty acres of said tract to Rachael
H. Ford; consideration one dollar; recorded same day. On

May 14th 1860 Ruth conveyed by quit-claim deed the middle twenty acres of said tract to said Fillmore.  This deed was recorded May 21st 1860.  On August 14th, 1862, the sheriff of Douglas county executed a sheriff's deed to Doan, King & Co. for the undivided-half of the middle twenty acres of said tract; recorded same day.  On the next day, August 15th 1862, Fillmore, as assignee of Ford, conveyed Ford's interest in the undivided-half of the middle twenty acres of said tract to Witter S. McCurdy.  This deed was recorded the same day it was executed.  September 1st 1862 Fillmore and wife executed a warranty deed to said McCurdy for the middle twenty acres of said tract.  This deed was recorded April 29th 1863.  While both the last-mentioned deeds purport to have been executed upon consideration—the first five dollars, and the second three hundred dollars—yet there was really no consideration given for either, according to the oral testimony in the case.  On February 2d 1864, Doan, King & Co. conveyed by quit-claim deed the undivided-half of the middle twenty acres of said tract to said Wyllys King, the plaintiff in error, who was one of the firm of Doan, King & Co.  This deed was recorded September 23d 1864.   On July 20th 1865, Rachael H. Ford and George Ford executed a quit-claim deed to Gurdon Grovenor for the middle twenty acres of said tract, in consideration of a promissory note for $1,000 given by Grovenor to Rachael H. Ford, which note had not yet been paid when this case was tried before the referee.  This deed was acknowledged and recorded July 21st 1865.   On August 10th 1865, another execution was issued on said judgment, and on the 15th of August 1865, the same was levied on the undivided-half of the west ten acres of said tract, and on the 7th of October 1865 the same was sold by the sheriff of Douglas county to Wyllys King.  It does not seem that said sale has yet been confirmed by the court, or that any sheriff's deed has yet been executed thereon.

There are really only two questions in this case, as presented in the brief of counsel for plaintiffs in error, and in their oral argument: *First*, Does the evidence sustain the

findings of the referee? *Second,* Did the referee err in receiving the testimony of George Ford?

The first is more a question of fact than of law. As a question of fact we would agree with counsel for plaintiff in error; but as a question of law we cannot. There is some evidence to sustain every material finding of the referee; and while we would agree with counsel for plaintiff in error that the weight or preponderance of the evidence is against some <span>1. Findings of fact —when not reviewable.</span> of the findings, yet we do not think that a great preponderance of the evidence is against any one of them. The findings that counsel more particularly complain of are the following: that Ford and wife and Ruth executed a deed back to Snyder for the west thirty acres of said tract, and that said deed together with the other deeds mentioned by the referee necessary to vest title in Grovenor were executed in good faith and for a sufficient consideration. The evidence of the execution of said deed, it must be admitted, was weak; but as the case comes to us we think it is sufficient to uphold the findings of the referee thereon. Said evidence was all oral, and of course the referee could judge of its force and effect better than we can, who see it only on paper. And while the weight of the evidence as we think tends to show that said deed and several of the other deeds were made for the purpose of hindering, delaying, and defrauding creditors, and were therefore void, yet the preponderance of the evidence tending to establish this fact is not sufficiently great to authorize us to set aside the findings and grant a new trial. The supreme court will not upon a bare preponderance of the evidence set aside the findings or report of a referee and the judgment of the court founded thereon and grant a new trial. This court has already decided that " The findings of fact by a referee are equally conclusive with the findings of fact by a court, or the special verdict of a jury." *Walker v. Eagle Works Manufg. Co.,* 8 Kas., 397.

The points that counsel for plaintiffs in error make with regard to a want of consideration we suppose are hardly seriously made. Every deed sufficiently expresses a considera-

tion. The most defective expression of the same is in the following words, to wit: "For and in considera-

2. Deed; consideration. tion of the sum of dollars lawful money of the United States of America to us in hand paid by the said parties of the second part at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged." The deed from Ruth and Ford and wife to Snyder for the west thirty acres expressed a thousand dollars consideration, according to the testimony of Ford, and the deed from Snyder and wife to Fillmore and Rachael H. Ford for the middle twenty acres expressed the consideration in the words above quoted, except instead of saying "sum of dollars" as above, it said "sum of hundred dollars." But suppose that these deeds had not expressed any consideration: would that have rendered them invalid? In our opinion it was never necessary that a deed, or any sealed instrument, should express a consideration; and it was not necessary at the time that these deeds were executed, that any contract should upon its face express a consideration: Comp. Laws, 351, § 6. The instrument itself imports a consideration: 2 Hilliard on Real Prop., 291, § 70.

Ford testified that he owed Fillmore $1,000, and that he owed his wife Rachael H. Ford $2,500, and that the two last-mentioned deeds were executed in payment or

3. Purchasers in good faith. part payment of these sums. The referee finds that these deeds operated as a payment to Fillmore of $700, and to Rachael H. Ford of $800. Now if this was true, and done in good faith, (and the referee finds that it was done in good faith,) who can question the sufficiency of the consideration? But it is said that Snyder and Fillmore and Rachael H. Ford cannot be considered *bona fide* purchasers, because the consideration for said conveyances was a past consideration, a pre-existing debt or debts. Such a rule as this has never been applied, that we are aware of, in any case where a party in good faith, in consideration of a pre-existing debt, purchased property from a party who in law and equity was at the time of the purchase the real and exclusive owner

thereof. It is only applied where a party, on the strength of a pre-existing debt, purchases property from some person who is ostensibly the owner, but who in fact or in law or equity is not the real owner, as where a party purchases from some person who was at one time the owner, but who has parted with his title, or from some person who is apparently the owner but who has obtained his ownership through fraud, and who is not therefore in law or equity the real owner. It is applied only where the person claiming to be a *bona fide* purchaser, attempts to defeat a title older or of longer standing than his own, and never where the title he desires to defeat is junior in point of time to his, unless his is actually fraudulent. (That a pre-existing debt is a sufficient consideration to support a mortgage or other conveyance, see *Work v. Brayton*, 5 Ind., 396; *Wright v. Bundy*, 11 Ind., 400; *Aiken v. Bruner*, 21 Ind., 137.) Suppose A. should owe B. and C. each one hundred dollars; and suppose B. in good faith should take a horse from A. in payment of the debt to B., would C. have a better title to the horse than B., because B. had taken the horse in payment of a pre-existing debt? This is just what the plaintiffs in error apparently claim. We however think differently. A person even in failing circumstances has a right to pay his debts by transferring his property to his creditors. And he may in the absence of statutory provisions prefer one creditor to another. Burrill on Assignments, 108, et seq., (2 ed.,) and cases there cited. At the time these two deeds last mentioned were executed neither Doan, King & Co., nor Wyllys King, had any right, title, interest or lien whatever in, to, or upon any part or portion of said tract of land. The most that can be claimed for them is that Ford owed Doan, King & Co. about $1,200. But the debt to Doan, King & Co. was of no higher character than the debts to Fillmore and Rachel H. Ford. No judgment had at that time been rendered upon either. If these two deeds were legal and valid, then all Ford's interest in the middle twenty acres of said land passed from him through Snyder to Fillmore and Rachael H. Ford. long;

before Doan, King & Co. obtained any judgment against Ford. And if the deed from Snyder to Ruth, dated July 13th 1859, was also legal and valid, then all Ford's interest in the west ten acres of said tract had passed from him through Snyder to Ruth long before Doan, King & Co. obtained their judgment against Ford. It is admitted by all parties that neither Doan, King & Co., nor Wyllys King ever got any interest in the east ten acres of said tract. Therefore upon the supposition that the three last-mentioned deeds are legal and valid, neither Doan, King & Co., nor Wyllys King ever obtained any interest in or to any part of said forty-acre tract of land, for all Ford's interest therein had passed from him before their supposed interest had attached thereto. If these three deeds are valid it makes no difference whether the other deeds were valid or not. If King has no interest in the land, it makes no difference to him who has the interest. If he has no interest in the land he cannot complain of the judgment of the court, even if it gave the land to the wrong person. The other defendants, the two Fords and McCurdy, are not complaining of the judgment of the court below.

The next question is, whether the referee erred in receiving the testimony of George Ford. The objection to his testimony is that it cannot be received in a suit in which his wife is a party. It is not entirely certain under what statute this action was tried. The case was referred May 28th 1866. The trial was commenced November 21st 1866; but it was not finished so that any report thereof was made by the referee to the court below until June 22d 1869. The report is dated May 11th 1869. The testimony of George Ford was undoubtedly received at sometime between the 21st day of November 1866, and the 11th day of May 1869, but precisely when we cannot tell. There were two or three different statutes in force governing the introduction of such testimony during that time: Code of 1859, (Comp. Laws, 176,) § 320. Ch. 30 of laws of 1862, (Comp. Laws, 236,) § 4, and code of 1868, §§ 319–323. Either of

4. Witnesses; husband and wife.

said statutes we think would permit said testimony. Ford was not called as a witness either for or against his wife. He was called as a witness for Grovenor and McCurdy, and against Ruth and King. The testimony of Ford was not received to affect the rights of his wife in this action in any manner whatever. The referee was bound notwithstanding Ford's testimony to find the facts with reference to Mrs. Ford the same as though no such evidence had been received, and we suppose he did so. It is true, the evidence of Ford might remotely benefit his wife. If Grovenor should obtain title to said land upon the testimony of Ford, he could not well plead a want of consideration if afterwards sued on the note held by Mrs. Ford. But this remote benefit to Ford's wife does not, as we think, render Ford an incompetent witness for or against the other parties. Both Ford and his wife were mere nominal parties in this suit. Neither of them claimed any interest in the land in controversy. It is true that Ford at one time owned the land, or a part thereof, in his own right; but he admitted that he had parted with all his interest therein long before this suit was commenced; and it is also true that Mrs. Ford at another time owned or claimed to own in her own right said land, or a part thereof, but she admitted that she had parted with all her interest therein sometime before this suit was commenced. Each once had a real interest in the land, and each once had only a nominal or contingent interest therein by virtue of being the husband or wife of the other who at that time had the real interest; but both admitted that neither had any interest in the land at the time this suit was commenced, and the report of the referee and the judgment of the court were against both, decreeing that neither had any interest in the land. The testimony of Ford therefore did not, so far as this case is concerned, benefit either himself or his wife. It really benefitted only Grovenor and Ruth. The testimony of Ford may have been competent for other reasons than those we shall mention but we think it was competent under the following rule: In an action where a husband and wife

together with other persons have been made parties, and in which the judgment may be rendered for or against any one or more of the plaintiffs and for or against any one or more of the defendants, both the husband and wife are competent witnesses for or against any one or more of either the plaintiffs or defendants except for or or against each other. This we think follows from § 320 of the code of 1859, and from § 319 of the code of 1868 without regard to the other sections of either code heretofore mentioned. Under those other sections husbands and wives may in some cases testify for or against each other. It would be strange if a plaintiff by making a husband and wife who had no direct interest in the result of the suit parties thereto could thereby deprive the other parties of the testimony of such husband and wife. Upon this point see *Crane v. Buchanan*, 29 Ind., 570; *Albaugh v. James*, 29 Ind., 398. The judgment of the court below is affirmed.

KINGMAN, C. J., concurring.

BREWER, J., not sitting in the case.