## N. B. WASS *et al.* v. TENNENT-STRIBBLING SHOE COMPANY.

1.  PETITION—*When Liberally Construed.*   A petition attacked for the first time in the supreme court for the reason that it does not state facts sufficient to constitute a cause of action, will be liberally construed in order to uphold the judgment rendered in the trial court.

2.  EVIDENCE—*Sufficiency of to Support Judgment.*   When, upon an examination of the entire record, it appears that there is sufficient evidence to justify the trial court in making certain findings of fact, *held*, that this court will not reverse a judgment based upon such findings.

3.  WITNESS—*Not Permitted to Discredit.*   A party offering a witness should not be permitted to discredit his testimony.   But witnesses frequently draw conclusions not warranted by the facts to which they testify, and it is the duty of the court to say, under the law, what facts are established by the testimony.

*Error from the District Court of Canadian County.*

This is an action brought by the plaintiff below to set aside a conveyance of certain real estate made by the defendant, N. B. Wass, through the intervention of a trustee, to his wife, Lydia A. Wass, and to subject the same to the payment of plaintiff's judgment against N. B. Wass. · The opinion states the facts.

*Dille & Schmook*, for plaintiffs in error.

*Forest & Gunn*, and *Blake & Blake*, for defendant in error.

The opinion of the court was delivered by

DALE, C. J.: March 26, 1890, the Tennent-Stribbling Shoe company filed in the district court of Canadian county an action against N. B. Wass and Lydia A. Wass, to subject their property to an execution, upon a judgment which plaintiff below had previously obtained against said defendants, and in such petition asked the court to decree that a certain transfer of real estate by the defendant, N. B. Wass, to the said Lydia A. Wass, be declared fraudulent and void, and that such transfer be vacated and set aside, and that the real estate, or so much thereof as might be necessary to satisfy the execution described in the petition, be subjected to levy, and sold under said execution. The defendants answered by general denial. The case was tried at the June term, 1894, of said court, without the intervention of a jury, and judgment was rendered for the plaintiff. N. B. Wass and Lydia A. Wass bring the case here for review.

The facts, as we gather them from the pleadings, the record, and the transcript of testimony before us, are that N. B. Wass, was, in the fall and winter of 1893 and 1894, engaged in business at El Reno, carrying on a dry goods store; that in addition to the gen-

eral stock which he carried in that store, he was the owner of fifty-six lots in the city of El Reno, and a homestead of forty acres adjoining the city on the south.   That on the 18th day of December, 1893, said Wass executed and delivered his deed of trust, conveying the title to fifty-six lots in the city of El Reno, to one W. N. Hubbell, to be, by said Hubbell, transferred by deed of conveyance to Lydia A. Wass, wife of N. B. Wass; that at the time such deed of conveyance was so made, the said N. B. Wass was indebted in the sum of about three thousand dollars to different persons, a portion of such indebtedness being for goods then in the store of said Wass, which goods had been purchased from different wholesale firms in the regular course of business and trade; that he was owing one of the banks at El Reno the sum of about $1,050, and another bank at the same place the sum of $294.   That he was surety upon a note in the sum of $500, and that he claimed to be indebted to his wife in the sum of $3,375, for the payment of which last sum of money the transfer of the fifty-six lots was made. Prior to the time of the conveyance of the lots to his wife, he claimed to be the owner of property of the value of $9,576, with liabilities of $6,930, but from the evidence in this case it would appear that he had overestimated his assets, to the extent of about $2,000, and that his real assets outside of his homestead, which is estimated to be worth from six to eight thousand dollars, were, in fact, about seven thousand, five hundred dollars, with liabilities of about $7,000.

It appears, from the record in this case, that, shortly after he conveyed to his wife the lots in controversy, he was unable to meet his obligations, and his stock of goods was seized by his creditors, and sold, and all of his assets, not exempt by law, were subjected to the payment of his debts, and this suit was instituted for the purpose of subjecting to the payment of his

debt to plaintiff below, the property deeded to his wife. At the trial of the case in the court below, the court made certain findings of fact, among which were the following:

1. That the plaintiff above named is the judgment creditor of said N. B. Wass.

2. That the indebtedness on which such judgment was found, was created prior to the 18th day of December, 1893.

3. That the said transfer of the said real estate by the said N. B. Wass to the said Lydia A. Wass, was made to hinder and delay the creditors of the said N. B. Wass, and was made without a valuable consideration.

4. That the contention of the defendants that said transfer was made in good faith, to settle, and in payment of, a prior existing debt, is not established by the evidence; nor does the evidence establish that the relations of debtor and creditor existed between the said N. B. Wass and Lydia A. Wass at the time of said conveyance.

5. That the execution issued on said judgment was returned, unsatisfied, and that said N. B. Wass has no personal property, and no real property, except that above described, out of which said judgment could be satisfied.

The court then proceeded to give judgment, as prayed for in the petition, and it is to reverse the judgment of the court below that this cause is brought here on appeal.

The are two propositions involved in this case, and upon which the plaintiff in error relies for a reversal: (1) that the petition in said cause does not state facts sufficient to constitute a cause of action against the defendants, or either of them; (2) that the decision of the court below was not warranted by the evidence.

I. We have no difficulty in determining the first contention raised by appellant. The plaintiff in error contends that the petition does not state facts sufficient to constitute a cause of action, for the reason that it must be alleged in a creditor's bill of this kind, that an execution has been issued and returned unsatisfied. Conceding that such allegation must appear in the petition, we think that the second and third paragraphs in the petition sufficiently show the fact that an execution had previously been issued and returned, satisfied only in part. The petition alleging, "that the execution was duly issued by the judge of said court upon said judgment, and placed in the hands of the sheriff of said county, that a certain attachment was issued out of the probate court prior to the judgment therein, and the same was levied upon certain personal property of the said N. B. Wass, subsequent to judgment, the proceeds of the property so attached has been applied on said judgment, but there still remains unpaid upon the aforesaid judgment the sum of $119.35, and the defendant is wholly without personal property upon which said execution may be levied and said judgment satisfied therefrom."

We think that a liberal construction of the allegations above quoted are sufficient to inform the court that an execution had, prior to the time of the institution of the suit, been issued and returned, satisfied in part, only. No objection was made to the sufficiency of the petition in the court below, either by motion or demurrer. A petition attacked for the first time in the supreme court for the reason that it does not state facts sufficient to constitute a cause of action, will be liberally construed in order to uphold the judgment rendered in the trial court. (*Mo. Pa. R. R. Co. v. Morrow*, 36 Kan. 495.)

II. The second contention of appellants to the effect that no evidence was before the court upon which the

court was warranted in finding the facts as heretofore set forth, is one worthy of grave consideration in this case. The only persons relied upon to establish the fraud as claimed in the petition of the plaintiffs below were the defendants, N. B. Wass and Lydia A. Wass. These parties were both placed upon the witness stand by the plaintiff and examined at great length.

If the evidence in the case warranted the trial court in its findings of fact, the decision rendered was correct. We have carefully examined the record before us with a view to determining upon what evidence the findings of the lower court were based. It clearly appears that the husband obtained about $2,500 from his wife in the year 1888; that the money was the wife's share of an estate, inherited from her mother; that the wife was appointed administratrix of the estate, and that N. B. Wass acted as the agent of his wife, the administratrix, in settling such estate, and dividing the proceeds among the heirs. Belonging to the estate were notes and mortgages which were for the most part retained by Wass, as the share of his wife. These securities were converted into money and the proceeds, to the amount of $2,500, kept by Wass under what he claims was an arrangement between his wife and himself that he was to use the money and return the same to his wife, as he became able, or as he might find it convenient. The testimony of Mrs. Wass was to the same effect. Neither party claimed that there was any definite time fixed when the money was to be returned, or that any stipulated amount of interest was to be paid for the use of the money. The evidence shows that at the time Wass transferred the real estate to his wife in December, 1893, no previous agreement was had between the parties that the debt should be satisfied in this way, and no demand upon the part of the wife for a settlement at that particu-

lar time was made.   That at the time of such transfer
N. B. Wass must have known that he had obliga-
tions to meet which he could not, in the ordinary
course of events, liquidate, as they matured.   Under
these conditions, was the finding of the lower court to
the effect that the transfer was made to hinder and
delay creditors wholly unsupported by the evidence?
We think not.   The transfer was made under an im-
pending belief of insolvency and it was bound to oper-
ate to hinder the creditors in securing payment of
their claims.   True, Mr. Wass testifies that he had
more than enough outside of his debts to satisfy
his creditors, but the result of the liquidation demon-
strated conclusively that he had not.

It is contended, also, that if Mr. Wass did convey
the property with the fraudulent intent to hinder and
delay his creditors, that the record nowhere shows,
even inferentially, that his wife knew of this intention
or was a party to it in any manner; that this being a
conveyance to secure an honest debt, the knowledge
of an intention to defraud must be brought home to
Mrs. Wass.   We think that if the record clearly
showed the existence of a debt which the husband was
bound to pay, the fact that payment of such debt to
Mrs. Wass would or would not hinder or delay cred-
itors, or that Mrs. Wass did or did not know that such
payment would so operate is wholly immaterial.   If
Wass owed his wife a debt she had a right to payment,
the same as any other creditor, and the law is well
settled that a creditor may secure his entire debt, even
if in so doing he thereby hinders and delays other
creditors.   And this brings us to the question which
we deem of vital importance in this case.   Was or was
not the husband indebted to the wife?   Does the rec-
ord warrant the finding of the trial court that the
evidence does not establish the fact that the relation
of debtor and creditor existed between husband and

wife at the time of the conveyance of the property in December, 1893?

The testimony, as before stated, shows that the husband received the $2,500.00 from the wife; but this fact alone is not sufficient to justify a court in saying that the money went to the husband as a loan. In fact, in the absence of proof, it might rather be presumed that money from the wife to the husband, or *vice versa*, should be considered as a gift, as the relation of man and wife is such that generally speaking, each party to the marriage contract uses the property of the other with as much freedom as if it were their separate portion. And especially is this true in relation to the money of the wife. With rare exceptions the husband assumes the right to control, use, and invest the money of the wife as freely as if it were his own, and it is seldom that the wife objects. Under the evidence contained in the record of this case, we think it clearly appears that when the wife came into her inheritance, she turned the same over to her husband, possibly with a vague idea that he would return it to her at some future time, but with no definite idea other than that generally in mind by a wife when her husband takes possession of property belonging to her separately. That is, she believes he can better manage it than can she; that it will be safer with him than with her. In short, that the interests of the family will be better conserved if he shall take charge of the money. The facts might reasonably be gathered from the record. It is true he testifies that he told her that he would pay the money back, and that she testifies that she let him have the money with that expectation, but notwithstanding this direct testimony we think that the entire record would justify a finding that the relation of debtor and creditor did not exist at the time of the conveyance of the property in question in this case; and we think

that it might properly be found that the act of the husband in making the conveyance was a voluntary act upon his part, to reimburse his wife for a favor received, rather than a settlement of a debt growing out of a contract.

The authorities are uniform that, as against creditors, such a conveyance will not stand. (*Hunt v. Spencer*, 20 Kan. 130; *Coale v. Moline Plow Co.* 25 N. E. 1016; *Porter v. Goble*, 55 N. W. 530.)

III. Indeed, counsel for appellants, in very able and exhaustive briefs, concede that, if the evidence warranted the court below in its findings of fact upon this proposition, then the conclusion we here announce is correct; but, contend that, inasmuch as the only witnesses relied upon by plaintiff below, were Mr. and Mrs. Wass, and, as both of such witnesses testified that the sum named as consideration for the transfer, was a loan, that such testimony must be accepted as conclusively proving the character of the transaction. We concede the general proposition that no person should be permitted to question the truthfulness of his own witnesses. But witnesses frequently testify to facts which do not warrant the conclusions which the witnesses place upon such facts. The court was bound to say, as a matter of law, whether or not, in view of all the testimony and circumstances surrounding the transaction, admitting that the testimony of Mr. and Mrs. Wass was true, did or did not such transaction create the relation of debtor and creditor between the parties? We can readily see how, under the evidence, the court could arrive at either conclusion, and, therefore, will not disturb the judgment.

Burford, J., having presided at the trial in the court below, not sitting; all the other Justices concurring.