ROBERT R. ELLISON AND MARY E. ELLISON v. PETER BEANNABIA.

1. JUDGMENT—*Findings of Fact—Rule.* The rule is here adopted, as in other territories and states which have the same practice act, that a finding of fact by the court in a case which is tried to it, is equivalent to a verdict by a jury; and if there is testimony to support the material allegations of the petition this court will not disturb the finding and judgment, even though the appellate court might think, upon an examination of the evidence, that the findings of fact should have been otherwise, unless the findings of fact made by the trial court were manifestly erroneous.

2. REAL ESTATE—*Conveyance—Fraud.* When a plaintiff comes into this court seeking the cancellation of a conveyance to land which had been procured from him by fraud, and it appears in evidence that he has received something of value in the transaction, the restitution of the valuable thing will not be required before granting relief to the plaintiff, if it appears that the consideration was given for one thing, when, in fact, it appears that, by the fraudulent representations of the defendant, it was given for another thing.

3. WITNESS—*Leading Questions.* When the purposes of justice plainly require it, the court may permit a party to put leading questions to his own witness. The power is discretionary with the court to be regulated by the circumstances of each case.

4. JUDGE—*Special Assignment—Jurisdiction.* In a civil case in which the judge who presides is not a judge who is regularly assigned to the judicial district, but is sitting under a special assignment, it will be presumed that he has been properly assigned and designated under the law and had jurisdiction to hear the cause, in the absence from the record of any copy of the order of his assignment to try the cause and to preside at the trial thereof.

*Error from the District Court of Canadian County.*

*Blake & Blake,* for plaintiffs in error.

*Dille & Schmook,* for defendant in error.

The opinion of the court was delivered by

McATEE, J.:   The petition in this case was filed upon the 26th day of September, 1894.   An amended petition was thereafter filed upon the 14th day of November, 1894, which alleged that the plaintiff, defendant in error here, was a Mexican by birth, over sixty-five years of age, illiterate, being unable to either read, write, speak or understand the English language; that for a series of years immediately preceding the 3d day of September, 1894, he was in the employment of the defendant, Robert R. Ellison, doing daily labor; that Ellison is an American by birth, speaks, writes and understands the English language, and the business ways and habits of the people of this country; and confiding and believing in the honesty, integrity and business capacity of Ellison, and that he would fairly deal with the plaintiff, that the plaintiff entrusted all his business affairs to the defendant, Ellison, and that prior to said date plaintiff made homestead entry and final proof of the southeast quarter of section eighteen, township twelve, north of range eight west of the Indian Meridian, Canadian county,

this Territory. That on and just prior to September 3, 1894, the defendant procured the plaintiff to execute a warranty deed conveying said land to him, the defendant, by representing that it was necessary for him, the plaintiff, to execute a paper relating to his homestead and final proof; that said representations were false and fraudulent, and by means of them the defendant procured the plaintiff to execute the said warranty deed, without consideration, and that the plaintiff was wholly deceived as to the character and effect of said paper and did not discover the nature of the transaction until the 22d day of September, 1894, when he immediately demanded a re-conveyance of the premises, and a return and cancellation of the deed which he had been thus fraudulenty induced to execute. Plaintiff demanded an order of the court for a cancellation of the deed and for proper relief.

The defendant answered, denying generally for a first defense, and for a second defense alleging that the plaintiff sold the land described in the warranty deed referred to, for a consideration, knowing well at the time he signed the same what its nature and purport were.

The reply of plaintiff put in issue the affirmative allegations of the answer.

The cause was tried upon the 9th day of March, 1895, before the Hon. Frank Dale, then presiding in the district court of Canadian county, the record showing "the cause was submitted to the court for trial without the intervention of a jury." Interpreters were sworn and the testimony of the plaintiff taken through them. The testimony of a number of witnesses called both for the plaintiff and the defendant was taken.

Upon the conclusion of the taking of the testimony, the court made general finding of fact to the effect, that

"the court finds against the defendants, and in favor of the plaintiff," and that "the deed    *    *    and the execution thereof were procured from him (the plaintiff) by the defendants, without his knowledge or consent, by the means, and as alleged in the petition," and "adjudged the said conveyance to be illegal and void; that the same be cancelled and the plaintiff have costs."

The defendants bring the case here upon assignments of error, (1) that the petition does not state facts sufficient to constitute a cause of action; (2) that the court erred in overruling the motion for a new trial; (3) that the judgment of the lower court is contrary to law; and (4) that the territorial district court of Canadian county, and the Hon. Frank Dale, judge presiding at the time of the trial of the cause, had no jurisdiction to render a judgment therein at the time that the said judgment was so rendered.

Upon these assignments of error it is argued by the plaintiff in error that the findings and judgment were contrary to law, and not justified by the evidence, and that the appellate court should examine the evidence and reverse the finding of the district court upon the facts therein shown, and make a finding consistent with the weight of the evidence which it is claimed greatly preponderates in favor of the defendants, plaintiffs in error here. In compliance with this request we have carefully read the evidence in the case.

Testimony was produced to show that the plaintiff, Beannabia, was a Mexican by birth, sixty-five years of age, could neither read nor write the English language, had known the defendant since 1891, and had worked for him three years, and "had all of his confidence in him," and during that time Ellison, the defendant, had, on account of his, Beannabia's, trust and confidence in him,

directed his affairs; that he executed the deed at the request of Ellison; " that he signed it ignorant, because he was just as ignorant as the day which has come for him to die;" and that he made his mark to the deed because Mr. Ellison requested him to do so, thinking at the time when he " pushed the pen " that he was signing his final receipt for his land; that he thought at the time he made his mark to the deed that he was doing some act that would get him his homestead, and believed so until he tried to rent the land to one Bruce Richardson, when he found out from Richardson that he had executed a conveyance of the land.   Beannabia further testified that " he never received two thousand dollars in money, or any other consideration, for executing the deed;" that all the money that he got to pay for the building of the house on his land was gotten by the "sweat of his work," and that he had tried to get a settlement for his work from Ellison, but was unable to do so.   The plaintiff further testified that he did not know what a deed was, nor how to convey real estate; that defendant had possession of his papers, which he would not permit him to see, and that Ellison had told him that the deed to which he made his mark had to be sent to Oklahoma City, to the land office.   The deed was acknowledged by Beannabia before the register of deeds of Canadian county in the presence of the defendant.

There was testimony to show that the register of deeds, Mr. Rider, did not understand Spanish, and that Ellison interpreted for him, and that he, Rider, did not explain to the plaintiff what kind of an instrument he was signing, and did not know, except from what Ellison told him, whether Beannabia had any information whatever on the subject.

A number of witnesses were produced on each side

some of whom, including the defendant, flatly contradicted the plaintiff. It will be seen, however, from the points of the testimony here enumerated that all of the allegations of the amended petition, upon which the case was tried, are supported by evidence.

Under the Code of Civil Procedure, the court now hears oral testimony in chancery cases, and like a jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner and characteristics, and has thus opportunities for judging of the value of the testimony, such as this court cannot have. The rule is, therefore, here adopted, as in other states which have the same practice act, that a finding of fact by the court is equivalent to a verdict by a jury; and if there is testimony to support the material allegations of the petition, this court cannot disturb the finding and judgment even though the finding of fact by the trial court might be contrary to the judgment of the appellate court. (*Beaubieu, et al. v. Hindman*, 37 Kan. 227; *Mulhall v. Mulhall*, 3 Ok. 252, 41 Pac. Rep. 577; *Ruth v. Ford*, 9 Kan. 17; *Beal v. Codding*, 32 Kan. 107; *K. P. Railway Co. v. Kunkel*, 17 Kan. 145, *Walker v. Eagle Mfg. Co.*, 8 Kan. 397; *Perea v. Barclay*, [N. Mex.] 27 Pac. Rep. 507.)

It is contended by the plaintiffs in error, that while nearly all of the indebtedness which is alleged by the plaintiffs in error to have constituted the consideration for the conveyance of the land, consisted of an indebtedness which existed prior to the time that the contract for the conveyance was made, that yet, an additional consideration for the transfer was given by Ellison at the time of the conveyance, and accepted and retained by Beannabia.

The finding and judgment of the court below included

a finding that the conveyance, as executed, was procured by fraud, and that the additional consideration referred to, was not a consideration for any contract which Beannabia understood that he was making, and that if such an additional consideration was, in fact, given, it was understood by Beannabia to be a consideration for some other thing, and not a consideration for the conveyance of the land.

The conclusion of the court was that the sale was not made; that plaintiff and defendants never agreed together, and that plaintiff was induced to, sign the deed, not knowing it to be a deed, through false representations. Under such circumstances we do not understand the rule to be that the plaintiff must frst make restitution before asking for a cancellation of the fraudulent instrument. The rule does not apply to cases where a party holds out that he gives consideration for one thing and by fraud obtains an agreement that it was given for another thing. (*Mullen v. Old Colony Railroad Co.*, 34 Amer. Repts. 349.)

After a number of questions had been asked of Beannabia through the interpreters the court found that "direct questions should be asked the witness" and "counsel for the plaintiff was ordered by the court to frame his questions in a direct manner so that the witness may better understand the same and the interpreter be better able to interpret the same into the Mexican language." Thereupon the further examination of Beannabia was conducted by means of leading questions, to which the defendants objected.

The rule as stated by Greenleaf is, that "where from the nature of the case, the mind of the witness cannot be directed to the subject of inquiry without a particular specification of it, leading questions may be asked," and

23—iv.

that "it is within the discretion of the judge at the trial, under the particular circumstances, to permit leading questions to be put to one's own witnesses;" and that "this discretionary power to vary the general rule is to be exercised only so far as the purposes of justice plainly require it, and is to be regulated by the circumstances of each case." (Greenleaf on Evidence, vol. 1, § 435, and note citing; *Moody v. Rowell*, 17 Pick. 498, and other cases.)

It is said in *Commonwealth v. Galaven*, 9 Allen, 271, that:

"The presiding judge may, of course, interrogate the witness in any form and to any extent he may deem important to the ends of justice."

We think the permission to ask leading questions in the case was one for the discretion of the presiding judge.

No objection was made at the time of the trial that the honorable judge who presided had no jurisdiction to render the judgment therein at the time that the judgment was rendered. The objection appears first in the petition in error, and finds no support in the record.

The Organic Act provides that the supreme court shall define said judicial districts, and shall fix the times and places in each county seat in each district, where the district court shall be held, and designate the judge who shall preside therein. No copy of the order designating the judge who shall preside therein has been furnished in the record. In the absence of a copy of the order we must presume that the judge who presided was properly appointed and designated under the law, and had jurisdiction to hear the cause

The judgment of the court below will be affirmed.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.