SAMUEL WATT v. CORA E. AMOS.

(Filed September 1, 1904.)

1. TRIAL TO COURT—Findings When Not Disturbed. Where the evidence reasonably tends to support the findings of the trial court, this court will not disturb such findings.

2. RIGHTS, NOT ACQUIRED IN VIOLATION OF LAW. Even though no penalty is attached to a prohibitory law, no rights can be acquired in violation of law, and as between two adverse claimants to public land, one of whom has initiated his claim in violation of law, and the other in obedience to law, the courts will favor the one who observes the requirements of the law.

(Syllabus by the Court.)

*Error from the District Court of Caddo County; before F. E. Gillette, Trial Judge.*

*Blake & Blake* and *John Livingston,* for plaintiff in error.

*A. J. Morris,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: This is a suit in equity by the defendant in error, Mrs. Cora E. Amos, to recover title to a lot in the town of Apache, Oklahoma, and to have the plaintiff in error, Samuel Watt, who now holds the legal title, declared a trustee of said real estate for her use and to compel a conveyance. The trial judge found for the plaintiff below, and awarded her a decree for the property. The defendant below appeals, and the only alleged error insisted upon by counsel for plaintiff in error is, that there is not

sufficient evidence to support the finding and judgment of the court.

Several witnesses testified for each side, and the evidence is conflicting and unsatisfactory. The plaintiff below introduced competent evidence in support of every material averment in her petition. It is true this evidence was contradicted by the witnesses for the defendant, but this court will not undertake to weigh contradictory oral evidence, or to determine the credibility of witnesses. The trial court heard each witness testify, and had the opportunity to determine the weight and credit to which each was entitled. There can be no serious contention but that there is evidence reasonably tending to support every material issue necessary to sustain the judgment in this cause.

This court has repeatedly stated the rule to be that where there is competent evidence reasonably tending to support the finding of the trial court, this court will not disturb such finding. (*Wyman v. Herard,* 9 Okla. 35, 59 Pac. 1009; *Jenks v. McGowan,* 9 Okla. 306, 60 Pac. 239; *Moore v. Bevis,* 9 Okla.. 672, 60 Pac. 503; *U. S. Nat'l Bank v. Nat'l Bank of Guthrie,* 6 Okla. 163, 51 Pac. 119; *Ellison v. Beannabia,* 4 Okla. 347, 46 Pac. 477; *Nat'l Bank of Guthrie v. Earl,* 2 Okla. 617, 39 Pac. 391; *Light v. Canadian Co. Bank,* 2 Okla. 543, 37 Pac. 1075; *Gillette et al v. Murphy et al,* 7 Okla. 91, 54 Pac. 413; *City of Guthrie v. Shaffer,* 7 Okla. 459, 54 Pac. 698; *Hall v. Powell,* 8 Okla. 276, 57 Pac. 168; *Betts v. Mills,* 8 Okla. 351, 58 Pac. 957; *Smith v. Spencer,* 8 Okla. 459, 58 Pac. 638; *Carmichael v. Pierce,* 10 Okla. 176, 61 Pac. 583; *Wass v. Tennant Stribbling Shoe Co.* 3 Okla. 152, 41 Pac. 339; *Hixon et al v. Hubbell et al.,*

4 Okla. 224, 44 Pac. 222; *Schultz v. Barrows,* 8 Okla. 297, 56 Pac. 1053; *Petee v. John Deere Plow Co.,* 11 Okla. 467, 68 Pac. 735; *Stanley v. Madison,* 11 Okla. 288, 66 Pac. 230; *Richardson etc. Dry Goods Co. v. Hockaday et al,* 12 Okla. 546.)

Counsel for plaintiff in error seek to invoke the rule stated in *Johnson v. Towsley,* 13 Wall. 72, and subsequent cases, and contend that no fraud is alleged or proven. We need not enter upon a discussion of this proposition. The rule suggested has no application to the case under consideration. This court in the case of *Downman v. Saunders,* 3 Okla. 227, settled the law as applicable to cases of this character, and the rule therein enunciated is decisive of the questions in this case.

Another fact is developed from the evidence in this cause which we think fatal to the contention of the plaintiff in error. The townsite of Apache is upon a portion of the lands ceded to the United States by the Kiowa, Comanche, and Apache tribes of Indians. These lands were opened to settlement for homestead and townsite purposes pursuant to an act of congress approved March 3, 1901, (U. S. Stat. vol. 31, p. 1094), and the President's proclamation bearing date July 4th, 1901. (U. S. Stat. vol. 32, p. 1975). Said act of congress contains the following provisions:

"The lands to be opened to settlement and entry under the acts of congress ratifying said agreements respectively shall be so opened by proclamation of the President, and to avoid the contests and conflicting claims which have heretofore resulted from opening similar public lands to settlement and entry, the President's proclamation shall prescribe the manner in which these lands may be settled upon,

occupied and entered by persons entitled thereto under the act ratifying said agreements, respectively; and no person shall be permitted to settle upon, occupy or enter any of said lands except as prescribed in such proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry."  .

Pursuant to this authority, the President promulgated his proclamation declaring said lands, not otherwise reserved, open to entry, settlement and to disposition under the general provisions of the homestead and townsite laws, on the 6th day of August, 1901, at nine o'clock A. M. Said proclamation also contains the following provision:

"Any person or persons desiring to found, or to suggest establishing a townsite upon any of said ceded lands at any point not in the near vicinity of either of the county seats therein heretofore selected and designated as aforesaid, may, at any time before the opening herein provided for, file in the proper local land office a written application to that effect describing by legal subdivisions the lands intended to be affected, and stating fully and under oath the necessity or propriety of founding or establishing a town at that place. The local officers will forthwith transmit said petition to the commissioner of the general land office with their recommendation in the premises. Such commissioner, if he believes the public interests will be subserved thereby, will, if the secretary of the interior approve thereof, issue an order withdrawing the lands described in such petition, or any portion thereof, from homestead entry and settlement and directing that the same be held for the time being for townsite settlement, entry and disposition only. In such event the lands so withheld from homestead entry and settlement will, at the time of said opening and not before, become subject to settlement, entry and disposition under the general townsite laws of the United States. None

of said ceded lands will be subject to settlement, entry, or disposition under such general townsite laws except in the manner herein prescribed until after the expiration of sixty days from the time of said opening."

If we assume that the townsite of Apache was applied for and reserved from homestead settlement prior to the date of the opening,—which is the most liberal view for the plaintiff in error,—then every person was prohibited from settling upon, occupying or entering any part or portion of said townsite prior to nine o'clock A. M. of August 6th, 1901. The evidence introduced by the plaintiff in error clearly shows that he and a number of others associated themselves together and went into the ceded Indian country on Sunday, August 4th, and camped near the proposed townsite of Apache; that on Monday, the 5th, these parties went upon the townsite and marked out and designated squares, blocks and proposed streets and made selection of their several lots, erected tents upon places that they supposed would be principal business lots, and took possession, and remained in possession continuously until the townsite was proved up by the probate judge. That one Webb, who was a friend of the plaintiff in error, and one of the parties who assisted in jumping said townsite on the 5th, attempted to take and hold the particular portion now designated as lot 18, block 1, southeast division, the lot in controversy in this case, and a few days afterward assigned his interest to the plaintiff in error. The plaintiff in error was a confessed "sooner" and his assignor was his confederate and co-conspirator. These premature pioneers and promoters were peaceful occupants and interested observers at the hour of nine o'clock A. M. on the 6th day of August, 1901, the designated time

when law-abiding citizens were permitted to settle upon, occupy and enter the promised land. The plaintiff and his associates strung a wire around the block which now embraces lot 18, and entrenching themselves within the *trocha,* serenely awaited the coming of those without the lines. Mrs. Amos appeared on the townsite a few minutes after nine o'clock on the morning of the 6th, and equipped with a ball of binding-twine, a few stakes and a wagon wrench, proceeded to rope out a lot just outside of plaintiff's wire, and adjacent thereto. It was claimed by the plaintiff in error and his associates that she was in the street, and no objection was made to her location until a day or two later when the surveying party reached this block and proceeded to measure out and officially locate the blocks, lots and streets. It was then found that the wire stretched by the plaintiff in error and his associates did not extend out to the street, and there was a small strip of ground between the street and the wire fence which was included in the twine enclosure of Mrs. Amos. The evidence is quite conflicting as to how much ground now embraced in lot 18 was within her lines. Some testify that there was only a few inches, some a few feet, while others testify that there were twenty-nine feet between the wire put up by plaintiff in error and his crowd and the true line of the street. In any event, there was enough within her enclosure upon which to initiate a settlement, and this she did and had lumber placed on the lot or in the street adjacent to the lot with which to erect a building on the lot. She was then prevented by the adverse claimants from making any further improvements and was kept out of possession, and lot 18 was awarded to

the plaintiff in error, and he received the trustee's deed for same.

The contention of the plaintiff in error is that there is no penalty attached to the prohibitory provisions of the law opening these lands to settlement, and that no rights can be forfeited by violating it. While it is true that the law imposes no penalty upon those who entered upon the lands or occupied them prior to the time permitted by the proclamation, yet it is expressly declared both in the statute and in the proclamation that "no person shall be permitted to settle upon, occupy or enter any of said lands except as prescribed in such proclamation until after the expiration of sixty days from the time when the same are opened to settlement and entry."

This court said in *Bay v. Oklahoma Southern Gas, Oil & Mining Co. et al*, 13 Okla. 425: "While it is true that no penalty is mentioned in the law and no forfeiture is provided, yet it is a universal principle of law that one cannot acquire any rights in violation of law."

Courts will not favor those who initiate a right by violating an express statute. The plaintiff in error, in violation of an express prohibitory statute, and the repeated warning contained in the proclamation of the President, made his settlement on the property claimed, one day in advance of the time permitted, and now seeks to defeat the claim of one who initiated her settlement after the time when the law permitted her to make a valid settlement, based upon a claim initiated in violation of law. As between two such claimants, the law will favor the one who observes the law.

We find no error in the record. The judgment of the district court is affirmed.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.