*Hon. WILLIAM H. DE WITT, ⎫
Hon. WILLIAM H. HUNT, ⎬ Associate Justices.

TUTTLE, TRUSTEE, RESPONDENT, *v.* THE MERCHANT'S NATIONAL BANK OF GREAT FALLS, APPELLANT.

[Submitted November 11, 1896.  Decided December 7, 1896.]

TRUSTS—*Assignment for Benefit of Creditors.*—A conveyance by a debtor of certain real estate by quit-claim deed, in trust, to secure the payment of his indebtedness to certain creditors, together with assignments of a contract for the purchase of real estate and of a receipt for a payment on stock in a corporation, for the same purpose, is in effect an assignment for the benefit of creditors.

SAME—*Death of Trustee—Jurisdiction of Court of Equity to Appoint Successor.*—Where the trustee of an express trust dies after instituting an action to confirm his title to the trust property, a court of equity has inherent power, independently of statute, to appoint a new trustee on its own motion and order his substitution as plaintiff.

---

*Succeeded, Jan. 4, 1897, by HON. HORACE R. BUCK.                        11

SAME—*Assignment for Benefit of Creditors—Delivery of Property—Fraud.*—Where a debtor executes and delivers a bill of sale of a frame building situated upon leased ground, the leasehold to which had expired, to a trustee to secure certain creditors, an unpreferred creditor who attached the building as realty after its transfer to the trustee is not in a position to urge that the transfer is void because the building was personalty and there was no delivery or immediate change of possession as required by section 226, Fifth Division of the Compiled Statutes, since, if the building was personalty, no valid levy was made, and if it was realty it was sufficiently delivered by the conveyance to the trustee made prior to the attachment. And in the absence of circumstances tending to show fraud, a fraudulent intent on the part of the debtor cannot be deduced from want of immediate physical occupation of the building by the trustee considering the nature of the property, where the evidence tended fairly to show that the assignor by his conduct and by the delivery of written instruments, intended to and did voluntarily surrender to the assignee possession of the property for the benefit of his creditors.

SAME—*Same—Shares of Stock.*—In such case the transfer to the trustee of a receipt for a payment on shares of stock, which was the only instrument which the debtor had evidencing his interest in the stock, was a sufficient delivery as against creditors not provided for in the trust deed, it appearing that the trustee afterwards voted the stock at the corporation's meetings and otherwise exercised full possession of it.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION by trustee to confirm his title to trust property. The cause was tried before BENTON, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the Justice delivering the opinion.

F. B. Tuttle, as trustee, instituted this action in Sept. 1892, alleging that the firm of Hanks & Fullerton were indebted to certain insurance companies in large sums, which they failed to pay on demand, and that to secure the indebtedness to such companies the defendant Fullerton and his wife, on July 22d, 1893, executed, acknowledged and delivered a quit claim deed of certain realties, in trust, to secure the sums due to such insurance companies. To further provide for the indebtedness Fullerton and his wife executed and delivered to Tu tle, as trustee, an assignment in writing of a contract for the purchase of a lot in Great Falls, Montana; Fullerton and wife also executed and delivered to Tuttle, as trustee, aforesaid, a bill of sale for a one-story frame building; the firm also executed and delivered for further security a written assignment to plaintiff, as trustee, of all the right, title and interest the firm of Hanks & Fullerton had in the Great Falls Improvement Company. This last assignment was signed by

Hanks & Fullerton by Fullerton.   The instrument was simply a receipt by the Great Falls Improvement Company to Hanks & Fullerton for $2,750 "being 55 per cent. of your stock in the Great Falls Improvement Company, and the final payment for the year 1892." The plaintiff alleged in his complaint that the defendant bank claimed some interest in the property transferred and asked for judgment adjudging their interest subordinate to the interest of the insurance companies, and prayed the court to confirm his title, as trustee, to the property transferred, that he be directed to execute the trust, and for further relief.

The defendant bank denied that the instruments under which Tuttle claimed were executed before the 24th of July, 1893, and alleged that on July 22d, 1893, and prior to the transfer of the property to Tuttle, and prior to the execution of the instruments, the property had been levied upon under writs of attachment by the bank in suits against Hanks & Fullerton and against Fullerton.   The answer avers fraud in the execution of the instruments for the purposes of defrauding the appellant bank.

While the action was pending Tuttle, the trustee, died. When the case was called for trial on July 14th, 1894, the appellant bank having suggested to the court that Tuttle was dead and that no person had been substituted as plaintiff in his stead, was granted leave to file a supplemental answer setting forth the fact of Tuttle's death.   Tuttle's death being confessed, the court of its own motion appointed C. M. Webster as trustee of the trust set up in the complaint, and ordered that the said Webster be substituted as plaintiff.   Webster appeared in open court and accepted the trust.   The defendant bank's counsel excepted to so much of the order as related to the appointment of a trustee as a part of the proceedings in the action.   The trial proceeded then to the court.   Testimony was heard and findings and judgment made in favor of the plaintiff.   The defendant bank moved for a new trial. This motion was overruled, and from the order overruling that motion and from the judgment the bank appeals.

The findings of the court established the indebtedness of Hanks & Fullerton to the insurance companies; set forth the execution and delivery of the instruments of transfer to Tuttle, as trustee, and that all of said instruments were made in good faith, and not with a view of cheating or defrauding the defendant bank, and that each and all of said transfers were made, executed and delivered before the bank commenced action against Hanks & Fullerton and Fullerton.

As conclusions of law the court found that the instruments were valid and lawful conveyances in trust, and that the attachment liens of the defendant bank were subject to the conveyances to the plaintiff.

The judgment directed the trustee to sell the property in the manner prescribed by law for the sale of property under execution, and that after payment to the trustee of the amount found due to him with interest thereon, any balance, if there should be any, was to be deposited with the clerk of the district court.    No objection is made to the form of the decree.

*Thomas E. Brady*, for Appellants.

I.    After the death of the plaintiff, Tuttle, the action could be continued and maintained only by his representatives or successors in interest.    (§ 22, Code of Civil Procedure.) Tuttle did not sue as mortgagee, but as trustee, and alleged in his complaint that he was the *owner* of the property.    There was nothing in the pleadings or in the evidence to modify the language of the instruments, and if they had any effect it was to vest the legal title to the property in Tuttle.    (*Bateman* v. *Burr*, 57 Cal. 482; § 278, Fifth Div. of the Comp. Stat.; Perry on Trusts (4th Ed ) § 602, 304, 311, 313, 316, 328; *Snelling* v. *Lamar*, 32 S. C. 72; *Townshend* v. *Fommer*, 125 N. Y. 446; *Schanawerk* v. *Hobrecht*, 22 S. W. Rep. 949.) And the general rule is that on the death of the trustee, unless the statutes provide otherwise, the title to the real estate covered by the trust passes to his heirs and the personal property vests in his executor or administrator. (Perry on Trusts, § 341, 342, 344, 346; Am. & Eng. Ency., Vol. 27, page

92 and note; *Tyler* v. *Mayre,* 95 Cal. 160.)   There was no provision made in the instruments for the appointment of a new trustee on the death of Tuttle and in such case, in the absence of statutory authority, the courts have no power to appoint a new trustee.   (Perry on Trusts, § 287.)   As Webster was not shown to be either an heir or a duly qualified and acting executor or administrator of Tuttle, he was neither a representative nor successor in interest and the court had no jurisdiction to substitute him as plaintiff in the action. (*Wright* v. *Phipps,* 58 Fed. Rep. 552; *Harlow* v. *Mister,* 64 Miss. 25; Jones on Mortgages, (5th Ed.) §§ 1387, 1388.) Wherever a substitution of parties is proper, it can only be effected by proper proceedings.   An opportunity must be given to all persons interested to assert their rights and objections and the person substituted must by proper pleadings show his right to proceed.   (*Central, Etc.* v. *Andrews,* 9 Pac. 213 (Kan.) ; Perry on Trusts, § 282-294.)

II.   The attempted transfer of the stock to Tuttle was void as to appellant, not only for the reasons making the sale of the building void, but also because it was not made in the manner required by sections 455 and 471, Fifth Division of the Compiled Statutes.   (*Conway* v. *John,* 23 Pac. 170 (Colo.); Cook on Stock and Stockholders (3rd Ed.) § 489.)   It was also void as an unauthorized attempt to transfer or create a trust in copartnership property by only one member of the firm.   (*Stein* v. *LaDaw,* 13 Minn. 412; *Hill* v. *Postley,* 17 S. E. Rep. 946.)

*Alex. C. Botkin,* for Respondent.

I.   A court in the exercise of equity jurisdiction has power to fill a vacant trusteeship by appointment; and this is especially true when a suit is pending for the administration of the trust.   (Perry on Trusts, § 282; *Buchanan* v. *Hart,* 31 Texas, 647; *Dailey* v. *New Haven,* 60 Conn. 314; *In re Petranek,* 79 Iowa 410; *Chapman* v. *Kimball,* 83 Me. 389; *Wilson* v. *Towle,* 36 N. H. 129; *Schlesinger* v. *Mallard,* 70 Cal. 326;

*Irvine* v. *Dunham,* 111 U. S. 327; 2 Pomeroy on Equity Jurisdiction, § 1087.)

II.    The delivery of the building was all that the nature of property permitted.    It was conveyed to the plaintiff by a deed duly executed, and was subsequently attached at the suit of the defendant as real estate.    Conceding that it was personal property, the defendant had no lien by attachment and accordingly no interest in the building.    Finally the only issue under the pleadings with respect to it is whether the conveyance was made " for the purpose of defrauding the defendant out of its lawful judgment."

III.    The transfer of the interest of the assignee in the Great Falls Improvement Company was perfected by the delivery of the only instrument in existence evidencing it and sections 455 and 471, Fifth Division of the Compiled Laws, do not apply as no shares had been issued, and the company had no books "containing the names," etc.

IV.    The objection that one of two partners can not assign copartnership property was not made in the trial court, and can not be raised for the first time in the appellate court. However, the right of a partner to mortgage property of a firm to pay or secure its debts is well established.    (*Milton* v. *Mosher,* 7 Metc. 244; *Tapley* v. *Butterfield,* 1 Metc. 515; *Ellis* v. *Allen,* 80 Ala. 515.)

HUNT, J.—This appeal first presents for decision the question of the jurisdiction of the court to appoint Webster as trustee to succeed Tuttle as trustee, who had died.

We regard the instruments upon which the action was brought as in effect assignments for the benefit of the creditors of Hanks & Fullerton.    As debtors they evidently made the transfers by reason of business embarrassments, growing out of their inability to pay over to the various insurance companies premiums which as agents for such companies the firm had collected.    They accordingly executed the several conveyances vesting the legal and equitable title in the assignee Tuttle, subject to trusts in favor of certain creditors,

and providing a method by which money could be raised with which to pay such creditors. The intervention of a trustee was expressly contemplated and a trust for the benefit of creditors was clearly created, by the debtors thus making an absolute appropriation of their property to the payment of certain of their creditors. (Burrill on Assignments, § 7; *Marshall* v. *Livingston National Bank*, 11 Mont. 351.) The instruments are similar in effect to one considered by the supreme court of Missouri in the case of *The State of Missouri to Use of Holiday* v. *Benoist*, 37 Mo. 500, where Judge Holmes for the court said:

"There was some discussion as to whether the instrument in question here was to be considered as a deed of trust in the nature of a mortgage security for a debt, or a partial assignment for the benefit of creditors. It does not purport to be a security for a debt, with power to sell if the debt be not paid when due. It conveys the property absolutely to trustees, to be sold for the payment of the debts named and preferred in it. It is clearly a partial assignment for the benefit of creditors, and not a mortgage security. Such instruments have always been treated as assignments. (*Gale* v. *Mensing*, 20 Mo. 461."

We do not think appellant's counsel means to dispute the correctness of these views, for in his brief he says that the instruments upon which the action is based "were not mortgages but were so far as they had any force or effect, absolute conveyances to Tuttle of all the grantor's title to and interest in the property." His contention, nevertheless, is that the court in the absence of statutory authority, had no power to appoint a new trustee. But in this respect we think appellant is in error.

The familiar general principle is that an express trust, validly created, must not fail for want of a trustee, and that a court of equity in its general equity jurisdiction may remove or appoint trustees under wills or other written instruments upon sufficient cause shown. This doctrine is laid down in *Attorney-General* v. *Barbour*, 121 Mass. 568. It is also rec-

ognized in *The Matter of Eastern Railroad Co.*, 120 Mass. 412, where it was held that the supreme judicial court of Massachusetts was authorized in cases of trusts, which would not be complete until a trustee was appointed to appoint trustees for the purpose of selling, or conveying or holding and managing the property.

The rule is thus stated by Pomeroy in his Equity Jurisprudence, § .1087:

"Courts of equity, therefore, independently of statute, possess the inherent power and jurisdiction to appoint new trustees whenever such action is necessary to protect the rights of the beneficiaries. In the absence of any other method prescribed by the instrument creating the trust, a court of equity will appoint trustees when none at all have been named by the creator of the trust, and will appoint new trustees when those originally named refuse to accept, or when a vacancy occurs by their death, resignation, permanent residence in a foreign country, or removal from office, as heretofore described."

The principle, as applicable to cases where the trustee, after taking possession of the property, dies without rendering any account, is sustained in the case of *Gorsuch, Trustee,* v. *Briscoe, Trustee,* 56 Md. 573. There one Eden made a deed of trust for the benefit of his creditors to one Alexander. The trustee took possession and died without rendering any account. It appeared that he was indebted to the trust estate. The creditors petitioned for the appointment of a trustee to complete and settle the trust. The court upheld the appointment of a trustee in the following language:

"We can see no objection to the appointment of a trustee by a court of equity in a case like this for the purpose of settling the trust. The former trustee had died with trust funds in his hands unaccounted for, and the appointment of another trustee to take charge of the trust estate was but the ordinary exercise of equity jurisdiction. So long as there was a trust in existence, a court of equity would not permit it to fail."

In the case of *Batesville Institute* v. *Kauffman,* 18 Wall.

151, the supreme court overruled a demurrer resting upon an objection that the trustee being dead, and no successor having been appointed, the trust recited in a deed of trust could not be enforced, saying :

"That the court has power to appoint a new trustee, and to compel the performance of the trust by him, is quite certain. It is, however, equally within the power of a court of equity to decree and enforce the execution of the trust through its own officers and agents, without the intervention of a new trustee."

Burrill on Assignments, § 415, recognizes the rule that where an assignee dies before the trust is finally executed, the court may appoint a new assignee, or select some other person to discharge the duties of the trust.

It was likewise decided in *People* v. *Norton,* 9 N. Y. 176, that the court of chancery with its general jurisdiction of all cases of trust had power by its general authority, independent of any statutes, to displace a trustee on good cause shown and to substitute another in his stead. (See also Sugden on Powers, 507.)

If additional authority were required it would be easy to add a list of cases to those we have selected, but the proposition seems fundamental and therefore need not be dwelt upon.

If the fitness of the trustees selected were questioned, or if objection to his appointment were made because the interest of the *cestuis que trusts* would not all be fairly looked after, or if it appeared that the execution of the trust would in any way be impeded, appellant's position would be different. But, the objections being independent of any such considerations as those just suggested we think it was proper for the court, when advised by the appellant of the death of the trustee, to make an appointment in order that the very purposes of the trust might be carried into execution. (*In re Tempest,* Vol. I, E. L. R. Ch. App. cases, page 485.)

Included in the property assigned in trust to Tuttle was a frame building, situated upon leased ground, the leasehold of which had expired. This building was attached by appellant

as a portion of the Hanks & Fullerton real estate—that is, the sheriff filed with the clerk and recorder a copy of the writ and a notice of attachment that certain realty and this building were attached. No actual possession was ever pretended to be taken by the sheriff, yet appellant contends that the transfer to Tuttle, as trustee, was void because there was no delivery or immediate change of possession, as contemplated by § 226, Fifth Division Compiled Statutes of 1887. As this section applies to assignments of goods and chattels, the appellant's position is not altogether consistent. Plainly, if the property was personalty and actual possession were necessary, no valid levy was made by the appellant, while if it was realty—as appellant evidently regarded it when it attached—it was sufficiently delivered to the trustee—at least until a reasonable time elapsed—by mere delivery of the deed to Tuttle, which was found to have been before the appellant's attachment was made. (Burrill on Assignments, § 243.) Appellant is, therefore, in no position to urge the line of argument he pursues.

Whether the assignment of this building and of the other property transferred was fraudulently made for the purpose of defrauding appellant in the collection of its judgment, and consequently was wholly void, was, however, made an issue at the trial and was found against appellant. This issue might have properly involved the question of the delivery of this building to the assignee. But the court evidently treated the building as personalty, and found that the assignors delivered possession of the same to the trustee Tuttle before the defendant bank attached. Probably the delivery was made upon the theory that the instrument of transfer to Tuttle, as trustee, was of the nature of a chattel mortgage, where possession was delivered to the trustee named; but the fact of the delivery of possession was found, and, considering the peculiar nature of the property and the impossibility of physical delivery, we cannot now say that possession of it was withheld by Hanks & Fullerton and thus imply fraud. We think the evidence fairly tends to show that by their conduct and the delivery of the written instruments, the assignors intended to give up, and

did voluntarily give up, to the trustee, possession of all the property assigned, including possession of this building, for the benefit of their creditors.    At least, in the absence of some circumstance tending to show fraud, we cannot deduce a fraudulent intent on the part of the assignors, solely because the assignee Tuttle did not have instantaneous physical occupation of the building.

The remaining contention of appellant is that the assignors did not deliver certain stock in the Great Falls Improvement Company to the assignee.    But the evidence is that the paper delivered to the assignee, and transferred in writing to him, was the only instrument which the assignors themselves ever had evidencing their interest in the shares of the corporation, and consisted of a receipt to Hanks & Fullerton for $2,750.00, being 55 per cent. of their stock in the company.    It appears that Tuttle, as trustee, afterwards voted in behalf of those shares at the corporation's meetings and exercised full possession of the shares to which the assignors might have been entitled.    Under such circumstances we think the property was delivered.

Appellant makes the further point in his brief that the delivery of this receipt was void because the written instrument of transfer was signed by only one member of the firm of Hanks & Fullerton.    But as this question was not raised by an assignment of error, it was not before the district court for review, and is not before us on appeal.    This disposes of all errors relied on.

The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DEWITT, J., concur.