THE STATE OF MONTANA, AT THE RELATION OF LEO C. HARMON, RECEIVER, ETC., APPELLANT, v. CONROW, ET AL., RESPONDENTS.

[Submitted January 14, 1897. Decided January 18, 1897.]

*Action on Sheriff's Bond for Unlawful Levy—Practice on Motion for Non-Suit—Delivery of Chattel.*

PRACTICE—*Non-Suit*—On a motion for a non-suit. all evidence tending to prove plaintiff's case will be assumed to be true.

ACTION FOR UNLAWFUL LEVY OF ATTACHMENT.—The evidence introduced by plaintiff tended to prove that, on July 29th, 1893, the Stock Growers' National Bank of Miles City, being insolvent, suspended business; that B, the cashier, was the only officer, and M was the only director of the bank present at the time; that B, being a debtor to the bank, upon the advice of M, by a written instrument reciting a consideration of one dollar, "sold and assigned" to the bank a certain frame building situated on what is known as the right of way in the town of Red Lodge, which is several hundred miles distant from Miles City, "said building being occupied at present by H. J. Armstrong and Co."; and there was also included a horse and other personal property; the instrument was witnessed by M, and B then in his presence and still acting under his advice deposited the paper in the vault of the bank; that B then notified the bank's bookkeeper of what he had done, and directed him to communicate the same to the person who should take charge of the bank; that on August 8th, before the levy of attachment, B notified Armstrong & Co. in writing, of the transfer, and directed that firm to pay to the receiver of the bank all rents due or to grow due upon the writ en lease under which they were in possession of the building; that when the levy was made, the clerk in charge of the store told the sheriff of this notice. There was no question of actual fraud, but defendant claimed, in his motion for non-suit, that the transfer was fraudulent as to creditors. *Held*, that under the facts stated there was some evidence tending to show an acceptance of the bill of sale by the bank. *Held*, also, that there was some evidence tending to show a delivery, and that it was error, under these circumstances, to grant a motion for a non-suit.

*Appeal from District Court, Park County; Frank Henry, Judge.*

ACTION on the relation of Leo C. Harmon, receiver of the Stock Growers' National Bank of Miles City, Mont., against John M. Conrow and others, upon a sheriff's bond, for damages for a wrongful levy. From a judgment on a verdict directed for the defendants, plaintiff appeals. Reversed.

Statement of the facts by the justice delivering the opinion.

Action by plaintiff, as receiver of an insolvent national bank, upon a sheriff's bond, for damages for the unlawful

levy upon a frame building, alleged to be plaintiff's property, situate upon a railroad right of way. The writ was issued in the case of *W. B. Jordan, plaintiff,* v. *E. E. Batchelor, defendant.* Defendants admitted the attachment, denied the ownership of plaintiff, and pleaded a justification by virtue of the writ of attachment heretofore referred to, and execution and sale under process in said suit. The cause was tried before a jury, and plaintiff's testimony was introduced. On defendants' motion the court instructed the jury to return a verdict for the defendants upon some one (although it does not appear which) of the following grounds : "(1) It appears from the evidence that the property described in the complaint, if transferred at all, was transferred to the Stock Growers' National Bank as security for an indebtedness, the amount and extent of which does not appear from the evidence; neither does it appear from the bill of sale, marked 'Plaintiff's Exhibit A,' and the said exhibit A is not executed with the formalities governing chattel mortgages required by law; nor was there any transfer of the possession of the property to the Stock Growers' National Bank. (2) The evidence fails to show that the said bill of sale, marked 'Plaintiff's Exhibit A,' was ever received or accepted by the Stock Growers' National Bank, either as security or otherwise. (3) The evidence fails to show that the Stock Growers' National Bank, or any one for it, ever accepted the property described in the complaint, either as security or otherwise. (4) The evidence fails to show any consideration whatsoever passing from the Stock Growers' National Bank to Elmer E. Batchelor for the transfer of the property described in the complaint. (5) The evidence fails to show any delivery of the property described in the complaint to the Stock Growers' National Bank, or any one for it. (6) The evidence fails to show any acceptance by any officer of the Stock Growers' National Bank prior to its insolvency, or by any one having authority from the comptroller of currency." Judgment was entered for defendants. Plaintiff appeals.

*H. C. Loud* and *Campbell & Stark,* for Appellant.

*Savage & Day* and *Strevell & Porter*, for Respondents.

HUNT, J.—The well established doctrine of practice under the former codes of this state was that on a motion for a nonsuit everything the evidence tended to prove was assumed to be true on appeal to the supreme court. (*Emerson* v. *Ditch Co.*, 18 Mont. 247, 44 Pac. 969.) To ascertain, therefore, whether there was a sale and delivery of the building, we must look into the evidence. The facts are as follows: On July 29, 1893, the Stock Growers' National Bank of Miles City, Montana, became insolvent, and in the afternoon of that day closed its doors to business. As there were numerous persons who owed the bank considerable money, Mr. Middleton, a director in the bank, in the forenoon of July 29th, advised Batchelor, the cashier, that it was desirable to obtain security upon these various loans. Batchelor himself owed the bank a considerable sum, and in the forenoon, in accordance with Middleton's prior suggestions, executed to the Stock Growers' National Bank a bill of sale, reciting that in consideration of one dollar he sold and assigned unto the Stock Growers' National Bank of Miles City the following described property, to-wit: "One one-story frame building situated in what is known as the 'right of way' in the town of Red Lodge, Park county, Montana, said building being occupied at present by H. J. Armstrong & Co." There were also included in the bill of sale a saddle horse in the possession of W. W. Alderson at Muddy, Mont., one Victor bicycle, and one set of bedroom furniture. The bill of sale was witnessed by Mr. Middleton. The bicycle and bedroom furniture were left by Batchelor in the bank, and subsequently passed into the hands of the receiver for the bank's benefit. Batchelor was the only officer of the bank in town upon the day of the failure, and Mr. Middleton thinks he himself was probably the only director in town. Mr. Batchelor was advised by Mr. Middleton, who by profession was and is a lawyer. When the bill of sale was executed, Batchelor put it into the vault of the bank in the presence of Middleton. Batchelor notified the

bookkeeper of the bank of the execution of the bill of sale, and of his having deposited the same inside the vault, and told the bookkeeper to inform whoever came to take charge of the bank that he had given a bill of sale, and placed it in the safe of the vault. The building described in the bill of sale was occupied by the firm of druggists of H. J. Armstrong & Co., at Red Lodge, Mont., under a written lease made February 14, 1893, between Batchelor and Armstrong & Co., running for two years from February 14, 1893. Upon August 8, 1893,—10 days after the failure, but before the levy of attachment in the suit of *Jordan* v. *Batchelor*,—Batchelor notified Armstrong & Co. in writing that he had given to the Stock Growers' National Bank a bill of sale for the drug store building, and directed said firm to pay rent then due, or to be due in future, to the parties in charge of the bank. When the sheriff levied upon the property, the person in charge of the business of Armstrong & Co. at Red Lodge told him that Armstrong & Co. had received Batchelor's order notifying them of the sale of the building to the bank. In answer to the notice of garnishment served by the sheriff, Armstrong & Co. stated that they had in their possession the sum of $50 due Batchelor for rent to date. The sheriff put one of the firm of Armstrong & Co. in charge as a keeper when he levied the execution, and advised him that he must pay the rent to the sheriff. The member of the firm told the sheriff that he did not care to whom he had to pay the rent, as he would just as soon pay it to the sheriff as to the Stock Growers' National Bank.

It seems to us quite clear that the tendency of this evidence was to prove a sale and delivery of the building to the bank, and a valid acceptance thereof by its officers. Batchelor, an officer and debtor of the bank, which was to close its doors in a few hours, in obedience to the request of the only then present director of the bank, to protect the institution executed a bill of sale of certain property including a building several hundred miles away, in the possession of a tenant under a written lease. The consideration for this transfer was Batche-

lor's debt to the bank.    There being no official of the bank present other than the director, upon whose advice Batchelor acted, Batchelor, in the director's presence, put the bill of sale in the vault, also telling a clerk of his action, and of the whereabouts of the bill of sale.    " I did nothing," testified the director, "at that time, after the execution of the bill of sale, except witness it, and see it was put in the vault."    The circumstances were peculiar.    It is conceded that there is no element of intentional fraud in the case.    The property was incapable of physical tradition, and lawfully in possession of a tenant.    The bill of sale was executed and deposited where other valuable papers of the bank were naturally kept; all at the suggestion of a director, who seems to have acted for the bank with a measure of authority which was recognized by Batchelor.    These acts by the director and Batchelor, together with the latter's subsequent act of advising the tenants of the sale to the bank, constituted a delivery and acceptance, valid against creditors under the statute.    (Compiled Statutes 1887, § 226.) The respondents' argument that the acts of the seller cannot alone constitute a delivery is not applicable, because the evidence warrants the assumption by us, on the motion for a nonsuit, that the vendee, the bank, did, by its director, as fully as it possibly could at the time, accept the building.    To hold otherwise would lead to the proposition that, if a bank is failing, and the only officer in charge is personally one of the debtors, that officer cannot personally execute a bill of sale of a leased building to the bank in good faith to protect it, and the bank cannot accept the same through the only other officer present, a director.    We cannot assent to this where the circumstances show an honest purpose to transfer the property, and where the receiver subsequently ratifies the director's acceptance.    As we view it, the delivery was sufficient on the ground that no other delivery was practicable under the circumstances, and that the acts performed were intended as a delivery of the house and an assignment of rents under the lease thereof.    (*Tuttle* v. *Bank*, 19 Mont. 11, 47 Pac. 203; *Thomas* v. *Hillhouse*, 17 Iowa 71; Tiedeman on

Sales, § 106.) Respondents say that the assignment of the lease and rentals was not complete until accepted by the assignee, or acted upon by the debtor; and that a mere direction by the creditor to his debtor to pay the debt to a third person, without the latter's knowledge or assent, is not sufficient to defeat a garnishment.    But the evidence is that the notice of sale to the tenants, and the order to pay rentals, was received by the tenants before the attachment was levied by the sheriff. As tenants, Armstrong & Co., were indifferent to the complications arising by claimants to the rentals or building, and so expressed themselves to the sheriff, who ordered them to pay the rent to him.    They explained their position—and the evidence of their explanation was not objected to—to the sheriff, and evidently did not mean to deliberately acknowledge themselves as holding any property or money belonging to Batchelor as against the bank.    In this respect the case is to be distinguished from *Bank* v. *Barnes*, 18 Mont. 335, 45 Pac. 218. The case is, therefore, not within the rule of decision as announced by Waples on Attachment § 416, and other books cited by respondent, where there was an absence of any notice or acceptance of or assent to an agreement whereby the debtor, instead of paying the debt to the creditor, agrees to pay it to a third person.  The facts at bar rather bring our decision upon this point within the rule of *Bank* v. *Barnes*, cited above, where it was laid down that an order to pay to a creditor money due or to become due creates an equitable interest in the fund in favor of the assignee, and that it is not necessary that the debtor upon whom the order is drawn should assent to the transfer.    Batchelor having parted with his interest in the property before attachment and garnishment, and notice of such sale having been brought home to the officer before seizure, the rights of the bank are paramount to those acquired under the process. Drake, Attachment §. 223. This discussion disposes of the points relied on by respondents, and leads to the conclusion that the court ought not to have directed a verdict for the defendants.  Judgment reversed.

*Reversed.*

PEMBERTON, C. J. and BUCK, J., concur.