## Gillette & Libby, *et al.* v. Murphy, Carroll & Brough, *et al.*

### (Filed July 30, 1898.)

1. JUDGMENT—*Appeal*—*Unnecessary Parties.* In a controversy over a certain judgment between two or more parties, as to who is the equitable owner thereof, where the judgment debtor fails to plead when made a party defendant, and has been duly summoned, and fails to appear at the trial either in person or by attorney, and the losing parties in such action appeal from the judgment of the trial court, such judgment debtor is not a necessary party to an appeal to the supreme court, and cannot be in any was affected by a reversal or modification of the judgment appealed from; its liabili y having been fixed when the first judgment, wh'ch was the subject of the action between the parties to the suit, was rendered

2. CHOSE IN ACTION—*Assignment*—*Real Party in Interest.* Written orders given by an ex-sheriff to his creditors on a county for warrants due from it to such ex-sheriff for salary and other fees, either in ful'

payment and satisfaction of a pre-ex'sting debt, or as security for the same, operate as an equitable assignment of the account or chose in action for which such warrants were to be issued from the delivery of such orders to such creditors; and where the orders do not embrace the entire chose in action, and the county denies any liability to the ex-sheriff, and refuses to issue the warrants as directed in such orders, and suit is brought against the county by such ex-sheriff with the tacit assent of the persons holding the orders, the county alone can object to such suit on the ground that it is not being prosecuted in the name of the real party in interest; and, after judgment is obtained in the name of the ex-sheriff, the parties hold ing the orders have an equitable interest therein, which equity will enforce, and such equities are prior to those of a firm of attorneys who claim such judgment by virtue of a subsequent assignment of the chose in action before judgment, and by an attorney's lien filed after judgment, especially when the attorneys knew of the equities of the person holding such orders prior to the filing of their lien; but, where the claim was saved by the skill and labor of such attorney, a court of equity may allow them reasonable attorney's fee out of the amount recovered for each party holding an order for warrants, and a fee of 25 per cent. of such amount so recovered is a reasonable fee.

3. SAME—*Equities.* A party buying a chose in action takes it subject to all existing equities, and can acquire no greater interest therein than his assignor had, at the time of the assignment.

4. ATTORNEY'S FEES—*Agreement.* An agreement between an attorney and his client, whereby the client agrees to pay such attorney a reasonable fee out of the proceeds of a proposed lawsuit, does not amount to an equitable assignment of an interest in the subject-matter of the litigation.

5. EVIDENCE—*Review.* Where the evidence reasonably supports the findings of facts of the trial court, such findings will not be disturbed on appeal.

6. JUDGMENT—*Equitable Interest In—Injunction.* Where a party has an equitable interest in a judgment, injunction will be granted to prevent the person in whose name the judgment was rendered, his assignees with notice, and attorneys w.th notice claiming un'er an attorney's lien, from se.ling or transferring such interest.
(Syllabus by the Court.)

*Error from the District Court of Canadian County; before J. C. Tarsney, District Judge.*

*F. E. Gillette, M. D. Libby* and *W. H. Grigsby,* for plaintiffs in error.

*Blake & Blake,* for defendants in error, Murphy, Carroll & Brough; *R. B. Forrest,* for defendants in error, Young & Tinklepaugh.

Action by Murphy, Carroll & Brough and others against Gillette & Libby and others.  Judgment for plaintiffs. Defendants bring error.  Affirmed.

Opinion of the court by

BURWELL, J.:  The above-named defendants in error commenced an action in the district court of Canadian county on February 22, 1897, to enjoin the defendants (in that suit) T. R. Jackson and Gillette & Libby, from assigning or in any way transfering a certain judgment rendered in that court against the board of county commissioners of Canadian county, and in favor of T. R. Jackson, which judgment Jackson had previously assigned to Gillette & Libby; but plaintiffs claimed that they were the equitable owners thereof.

The facts leading up to the present suit are about as follows:  T. R. Jackson was the duly elected, qualified and acting sheriff of Canadian county during the years 1893 and 1894.  He failed to make annual settlements with the board of county commissioners; but some time during the month of January, 1895, and after he had re tired from office, he filed with such board itemized accounts for services claimed to have been performed by him as sheriff for that county, amounting to $839.80.  On January 15, 1897, the county commissioners audited and allowed all of the accounts or claims of Jackson, and ordered warrants drawn therefor in his favor; but on the next day, January 16, 1895, the county commissioners rescinded and canceled the order of allowance made the

previous day, and assigned as a reason therefor that Jackson had collected and retained fees in an amount greater than his lawful salary, and that he (Jackson) was at the time indebted to the county in consequence thereof. On January 25, 1895, Jackson was indebted to the firm of Murphy, Carrol & Brough in the sum of $221.05, and on that day he made and delivered to such firm the following order:

"EL RENO, January 25, 1895.

"County Clerk of Canadian County—Sir: Please issue and deliver to Murphy, Carrol & Brough warrants allowed me as follows: One for $179.20, one for $42.00, one for $9.05, and one for $6.00.

[Signed] T. R. JACKSON."

And as a part of the same transaction, and at the same time, the parties entered into an agreement by which Jackson executed his note to Murphy, Carroll & Brough for the amount due them, which note was to mature 60 days from that date; and the above order was delivered to Murphy, Carroll & Brough upon the condition that, if the warrants mentioned in the order were issued and delivered to Murphy, Carroll & Brough, the warrants were to be in full satisfaction and discharge of Jackson's indebtedness to them, and his promissory note was to be surrendered and canceled, but, if the warrants were not issued and delivered as directed in the order, then the promissory note was to remain in full force and effect. The warrants were never delivered to Murphy, Carroll & Brough, and this note has never been paid by Jackson. They have frequently demanded payment, and Jackson has at all times acknowledged his liability thereon.

On February 1, 1895, Jackson was indebted to J. E. Jones in the sum of $162.75, and on that day he executed and delivered to said Jones his order, as follows:

"EL RENO, O. T., Feb. 1, 1895.

"J. K. Stone, County Clerk, Canadian County, O. T.—
Dear Sir: You will please reserve out of warrants due
me by Canadian county, O. T., the sum of $162.75, and de-
liver same to Mr. J. E. Jones, and oblige, yours truly.

[Signed]                               T. R. JACKSON."

At the time this order was given, it was agreed be-
tween the parties that the warrants referred to in the
above order were to be delivered to and received by Jones
in absolute payment of Jackson's debt to him. If, how-
ever the warrants mentioned in the order were not deliv-
ered as directed therein, then the debt due from Jackson
to Jones was to remain a valid, subsisting liability until
otherwise satisfied. Jones, some time after receiving the
above order, assigned the same to one D. J. Young, who
was the owner thereof at the commencement of the pres-
ent suit.

On February 14, 1895, Jackson was indebted to one V.
D. Tinklepaugh in the sum of $58, and on that day he
executed and delivered to Tinklepaugh the following or-
der and agreement:

"EL RENO, O. T., Feb. 14, 1895.

"Hon. County Clerk and Commissioners of Canadian
County, O. T.: Please accept this order to issue and de-
liver to V. D. Tinglepaugh county scrip to the amount of
$61.50 face value, and charge the same to my account.

[Signed]                               T. R. JACKSON."

Agreement: "This article of agreement, entered into
this 14th day of February, 1895, between V. D. Tinkle-
paugh and Thomas Jackson, to-wit: that the said Jackson
has this day and date issued an order on the county clerk
and commissioners to V. D. Tinklepaugh for the said
$61.50 as payment of an account of $58.00, and this shall
be a receipt in full for the same when said scrip is issued
and delivered to the said V. D. Tinklepaugh; but, in case

the scrip is not allowed, the said Jackson is still held for the amount.

[Signed]                               V. D. TINKLEPAUGH,
                                       T. R. JACKSON."

Since the execution and delivery of the order and contract, Jackson has paid Tinklepaugh $35, which reduces his claim from $61.50 to $26.50. This amount remains unpaid. At the time Jackson executed and delivered the order to Murphy, Carrol & Brough, neither Murphy, Carroll & Brough nor Jackson had any knowledge of the action taken by the board of county commissioners, on January 16, 1895, rescinding and disallowing Jackson's account. Murphy, Carroll & Brough, Jones, and Tinklepaugh each filed their respective orders with the county clerk as soon as they received them, but no warrants have ever been issued in conformity therewith.

On may 29, 1895, the board of county commissioners of Canadian county instituted an action against T. R. Jackson, as sheriff of that county, and the sureties on his official bond, to recover from them a sum exceeding $3,000 alleged to have been collected and received by said Jackson as sheriff during his term of office, in the way of fees, and in excess of the amount of his lawful salary. Jackson answered by a general denial, and by a counter-claim, and in his counter-claim included the items and accounts for which he had issued the above orders to Murphy, Carroll & Brough, Tinklepaugh and Jones, and which accounts had been allowed by the board of county commissioners on January 15, 1895, and warrants directed to be issued therefor, but which order was rescinded the following day.

On the trial of the cause between the board of county commissioners and Jackson, it was found by the district

court, upon a full accounting between Jackson, as sheriff, and said county, that Jackson was not indebted to the county in any sum whatever, but that the county was indebted to Jackson on the 15th day of January, 1895, in the sum of $588.16, and judgment was rendered in favor of Jackson and against the county, for that amount, which judgment included all of the accounts of Jackson against the county for which orders were by him executed and delivered to Murphy, Carroll & Brough, Jones, and Tinklepaugh.

After Jackson had been sued on his official bond by the board of county commissioners, he employed Gillette & Libby, a firm of attorneys living in El Reno, the place where such suit was pending, to defend that action and prosecute his counter-claim against the county; and, having no means with which to pay them for their services, he made an agreement with them whereby they were to have whatever judgment that Jackson might recover against the county, but, if Jackson failed to recover any judgment against the county, then and in that event Gillette & Libby were to receive nothing for their services. During the pendency of the action, and before judgment, Jackson made, executed and delivered to Gillette & Libby an assignment in writing whereby he conveyed or attempted to convey and transfer to them his claim against the county, which claim consisted of all his unpaid demands against the county involved in that action, and all of his right, title, and interest in and to any judgment thereon which might be recovered. Gillette & Libby at the time of their employment as attorneys in the action between the county and Jackson, and at the time Jackson executed the written assignment to

them, had no actual knowledge or information that Murphy, Carroll & Brough, Jones, or his assignee, Young, and Tinklepaugh, had any interest in any of the accounts or claims set up by Jackson in his defense against the action of the county against him. They first received information to this effect after the referee had filed his report in the district court, and before final judgment in the case.

On January 19, 1897, and after final judgment had been rendered, Gillette & Libby filed an attorney's lien for $700 on such judgment for services rendered in that case, and caused the same to be entered of record in the judgment docket in said court opposite said judgment. At and prior to the bringing of this suit, Gillette & Libby were trying to sell and transfer the judgment recovered by Jackson against the county, and claimed that they had a right to do so under their assignment and attorney's lien. Murphy, Carroll & Brough then brought this suit, praying that Gillette & Libby be enjoined from assigning such judgment, and for other relief, and made T. R. Jackson, V. D. Tinklepaugh, and the board of county commissioners co-defendants with Gillette & Libby. Pleadings were filed by all of the parties to the action except the board of county commissioners, who filed no pleading of any kind, and did not appear at the trial before the referee or when the case was tried by the court. On the trial the court held that the rights of the persons holding the orders made by Jackson were prior and superior to those of Gillette & Libby. From this judgment Gillette & Libby and Jackson appeal to this court, without making the board of county commissioners a party defendant in error; and the defendants in error insist that, by reason of

this failure, all of the necessary parties were not made parties to the appeal, and there being a defect of parties on appeal this court has no power to consider the case, but should dismiss the appeal, and remand the case to the lower court. As this question goes to the jurisdiction of this court, we will consider it first, because, if it should be determined that all of the necessary parties are not made parties to the appeal, we would have no right or power to consider any other question in the case.

It is sometimes very difficult to decide who are necessary parties to an appeal, but in a case like the one under consideration we think the application of one or two simple tests given us by our law writers will settle the question: First, can a reversal or modification of the judgment appealed from in any way affect the board of county commissioners? And, second, could the board, if made a party to the appeal under any circumstances, change its present status? If it could not be in any way affected by the appeal, or could not under any circumstances change its status if made a party, then we think it would not be a necessary party. In the suit between the county and Jackson, Jackson recovered a judgment for $588.16. The board never appealed from that judgment, and it has long since become final, and the board, having failed to appeal from that judgment, can never change its liability thereon. The board of county commissioners was made a party in the present suit, but did not answer or appear at the trial. It defaulted in that suit, evidently because it had no interests that could be affected by any judgment which might be rendered in such action. This suit was an action over the judgment

rendered against the board of county commissioners, and in favor of Jackson. Gillette & Libby were claiming all of said judgment by virtue of an assignment, and by their attorney's lien, while the plaintiffs and the other defendants were claiming a part of the judgment under their respective assignments of the claims against the county, which claims were included in said judgment. The board of county commissioners owes the judgment, and is only interested in seeing that it is not compelled to pay the judgment twice; and this, we think, it cannot be required to do under the circumstances in this case. It can go into court at any time, and pay the judgment standing against it, and take the clerk's receipt for the same, which would forever settle its liability. Neither of the parties to this action could thereafter cause such board any trouble. The board is simply a trustee, holding the fund for the party or parties whom the court may determine to be entitled to it. The court could at any time require it to pay the money or warrants therefor into court. It is immaterial to the board who it owes. Its liability is in the form of a judgment, and collection could be enforced at any time. A party is not a necessary party when he has no interests that can be affected in the suit, or does not stand as the representative of some other party who has some interest in the matter in controversy. We think the board of county commissioners is not a necessary party to the appeal in this case, and so hold.

The plaintiffs in error allege that the court erred in not sustaining the objections of plaintiffs in error (defendants below) to the introduction of any evidence on the trial on behalf of Murphy, Carroll & Brough under their petition, on behalf of D. J. Young under his cross petit-

ion, and on behalf of V. D. Tinklepaugh under his cross-petition, upon the ground that neither said petition and cross-petitions, nor either of them, stated facts sufficient to constitute a cause of action against Gillette & Libby or T. R. Jackson. An examination of the petition and cross-petitions referred to above satisfies us that there is no merit in the contention of plaintiffs in error, and without further comment we conclude that defendants' objections to the introduction of evidence under the pleadings referred to above were properly overruled.

The next point raised is that the several orders upon which the plaintiffs and cross-petitioners sought to recover were invalid, and not capable of being enforced, because not in writing, as provided by section 821 of the Statutes of Oklahoma, of 1893, which section is as follows:

"Sec. 821. The following contracts are invalid, unless the same, or some note or memorandum thereof be in writing, and subscribed by the party to be charged, or by his agent: * * Fourth, an agreement for the sale of goods, chattels or things in action, at a price not less than fifty dollars, unless the buyer accept or receive part of such goods and chattels, or the evidence of some of them, of such things in action or pay at the [time?] some part of the purchase money." * *

At the time these different orders for warrants were executed and delivered by Jackson to Murphy, Carroll & Brough, Young, and Tinklepaugh, each of them, as well as Jackson, thought that Jackson's claims had been allowed by the board of county commissioners, and that they could secure warrants for the amount of their respective orders on presentation of such orders to the county clerk. The warrants, however, were never is-

sued, and evidently none of the parties thought that they had been issued at the time the orders were executed and the contracts entered into.

We do not believe that the orders executed by Jackson are limited to the construction given them by plaintiffs in error, viz. that by their terms they attempted to transfer warrants. The order of Murphy, Carroll & Brough says: "Please issue and deliver to Murphy, Carrol. & Brough warrants allowed me as follows." * * The order of Jones says: "You will please reserve out of warrants due me by Canadian county, O. T., the sum of $162.-75, and deliver the same to," etc. The order of Tinklepaugh says: "Please accept this order to issue and deliver to V. D. Tinklepaugh county script to the amount of $61.50, face value, and charge the same to my account," etc. The theory of plaintiffs in error regarding these orders is presented with a great deal of skill, and, from a casual reading it would seem some force; but taking into consideration the conditions as they then existed, and the relation of the parties to each other, we are of the opinion that these orders were intended as an assignment of the thing in action as it then existed; and, if the warrants were never issued, they were to transfer so much of Jackson's claim against the county as indicated by the respective orders to the holders of the same. If these orders reached the claims or accounts of Jackson against the county, what delivery could have been made of the chose in action, other than was made by Jackson to these parties? The delivery could only be a constructive one; actual delivery was impossible; and, when Jackson executed these orders to the defendants in error, such orders were such memoranda or writings, and the deliveries

thereof were such deliveries, as meet the requirements of section 821 of our Code.

It was held by this court in the case of *Bank v. Gill*, 6 Okla. 560, 54 Pac. 434, that a check or draft drawn on a bank did not, until presented for payment, operate as an assignment of the fund in such bank to the amount of the check or draft. The rule laid down in that case, we think, is sustained by the better, if not the weight of, authorities; but there is a difference between a check or draft drawn on a bank and an order on a county or person to be paid out of a specific fund. A check or draft is drawn upon the general credit of the maker, while an order on a specific fund operates as an assignment of the fund to the amount of such order. In support of this doctrine, attention is called to the case of *Bank v. Barnes*, decided by the supreme court of Montana, and reported in 45 Pac. 218. In that case a party by the name of Tyler was working for the Granite Mountain Mining Company. He was indebted to the Merchants' & Miners' National bank, and gave said bank the following order:

"PHILLIPSBURG, Mont., Jan. 31, 1894.

"To James H. Henley, Superintendent Granite Mountain Mining Co., Granite, Montana—Dear Sir:

"Please deliver to Merchants' & Miners' National Bank the check due me, March 15, for hauling wood from Cleveland shaft to Bimetallic Hoist,

[Signed]                          A. TYLER."

This order was immediately presented by the plaintiff bank to the mining company for acceptance, but it was not accepted, as there was no money yet due to Tyler. Tyler, however, continued to work for the mining company, which subsequently became indebted to him. The court,

in passing upon the question of the effect of such order, say: "The equitable doctrine with respect to an assignment of property to be acquired in future is extended to this species of equitable transfer. The fund need not be actually in being. If it exists potentially (that is, if it will, in due course of things, arise from a contract or arrangement already made or entered into when the order is given) the order will operate as an equitable assignment of such fund as soon as it is acquired, and will create an interest in it which a court of equity will enforce," —citing *Brill v. Tuttle*, 81 N. Y. 454; *McFadden v. Wilson*, 96 Ind. 253; *Macomber v. Doane*, 2 Allen, 541; *Tripp v. Brownell*, 12 Cush. 376,—and further say: "The order given therefor by Tyler to the plaintiff bank upon the mining company was an equitable assignment of property to be acquired in the future, and created in the bank an interest in the fund to be acquired which equity may enforce." The order in this case, as will be observed, did not provide in express language for the assignment of the account or debt itself, but was for the delivery of a check; yet the court held that such an order operated as an assignment of the debt, which is the same doctrine laid down by this court in the present case, except that the Montana court went further, and held that an order to pay to a creditor money due or to become due creates an equitable interest in the fund in favor of the assignee, and that it is not necessary that the debtor upon whom the order was drawn assent to the transfer. The same doctrine is re-affirmed in the case of *State v. Conrow*, (Mont.) which is reported in 47 Pac. 640.

The court of appeals of Colorado, in the case of *Bank v. Spratlen*, 43 Pac. 1048, lay down the rule as follows: "An order to a bank to pay to the persons named a

specified sum, out of a special fund, belonging to the drawer, in the hands of such bank, constitutes an assignment of such fund to the persons named in the order, to the amount specified, whether the bank accept the order or not."

In *Christmas v. Russell*, 14 Wall. 84, it was decided: "A bill of exchange or check is not an equitable assignment, *pro tanto*, of the funds of the drawer in the hands of the drawee. But an order to pay out of the special fund has always been held to be a valid assignment in equity, and to fulfill all the requirements of the law."

In the case of *Iron Works v. Kilgore*, 67 N. W. 1017, the supreme court of Minnesota, in delivering the opinion in that case, used the following language: "An order attached to an account directing its payment to the party named in the order, and delivered to him, operates as an assignment of the debt or account, although the order is not accepted by the debtor, and is valid as against a subsequent garnishment."

It was said by the supreme court of Missouri in the case of *Macklin v. Kinealy*, 41 S. W. 893, that "no particular form of words is required to constitute an assignment of a chose is action, any good showing of intent to transfer the owner's interest being sufficient."

The supreme court of Minnesota decided, in the case of *Hurley v. Bendel*, 69 N. W. 477, that, after a bill or account has been actually earned, an oral agreement between the parties, whereby one sells such account to the other, operates as a valid assignment thereof.

In the case of *Griggs v. City of St. Paul*, decided by the supreme court of Minnesota, and reported in 57 N. W. 461, where the party drew an order on the city which

was in words following: "To the City of St. Paul: Pay
to S. $250, and deduct that amount from any money
which may be due me on account of the grading of Parke
avenue. [Signed] N."—it was held "that in view of the
fact that the order was to a city which had
no power to accept drafts generally on the credit
of the drawer, that the instrument was not a
draft or a bill of exchange, but an order payable out
of a particular fund, and operated as a partial assign-
ment of that fund." (See also the case of *Lumber Co. v.
Moore*, handed down by the court of civil appeals of
Texas, and reported in 41 S. W. 180.)

It was decided in the case of *Hurley v, Bendel* (Minn.)
69 N. W. 477, that, after a bill or account has been actu-
ally earned, an oral agreement between the parties,
whereby one sells such account to the other, operates as
a valid assignment.

The supreme court of Oregon, in the case of *McDaniel
v. Maxwell*, reported in 27 Pac. 952, held that an order
given to a bank by a party who had a claim against a
city, and who at the same time entered into an oral
agreement with such bank to the effect that it was to
collect the money from the city, and the maker of the or-
der was to draw orders on such bank in favor of persons
working for him, in payment of their labor, which orders
were to be honored by the bank whenever it had any such
fund on hand, was an equitable assignment as against a
third party garnishing the bank, and claiming to be a
creditor of the party making such order.

In the case of *Association v. Coleman*, it was decided by
the supreme court of appeals of Virginia. (26 S.
E. 843,) that "to constitute an equitable assign-

ment all that is necessary is that the person to whom the fund is due, or is coming due, shall draw an order on the person having control of the fund, directing him to pay it to a person named,"— citing *Brooks v. Hatch*, 6 Leigh. 541; *Railroad Co. v. Miller*, 80 Va. 821; *Switzer v. Noffsinger*, 82 Va. 518; Pom. Eq. Jur. sec. 373; and Story Eq. Jur. secs. 1043, 1044, 1047.

In *Joyce v. Wing Yet Lung*, (Cal.) 25 Pac. 545, the court said "that an order drawn by a creditor on his debtor for the whole amount of the indebtedness operates as an equitable assignment of the debt to the payee, and a verbal acceptance of the order by the debtor is valid."

The authorities above cited, we think, are ample to sustain the position taken by this court, in holding that the orders issued by Jackson to Murphy, Carroll & Brough, Tinklepaugh, and Jones, were sufficient to constitute an equitable assignment of the debt due from the county to Jackson to the amount named in the orders, such being the evident intent of the parties. The assignment of a part of a chose in action would have the same force and effect in law, and would convey the same title to the extent of the order as though the order were for the entire account; and it is not necessary to have the consent of the debtor to constitute an effectual assignment in equity of a part of a debt. The authorities supporting the right of a party to sell a portion of his chose in action are numerous, and emanate from the highest courts of this country. (See case of *Price v. The Elmbank*, 72 Fed. 610; *In re Cofran, Id.*)

Appellants contend that the liability existing from Jackson to Murphy, Carroll & Brough, Tinklepaugh, and

Jones was not a sufficient consideration for the orders delivered to them as against the rights of Gillette & Libby under their assignment and attorney's lien; especially so when it was agreed that Jackson should be liable to them if the warrants were not paid. We have already held that the delivery of these orders was a delivery of the chose in action, and that the order given to each of these parties constituted a written assignment thereof; this delivery and writing or memorandum took the transfer out of the statutes of fraud, as provided in section 821 of the statutes; and, having so decided, it is not necessary to determine the question of past consideration.

But what would be the legal effect if these orders were given as security for a past indebtedness? In our opinion, it would not make any difference whether the chose in action was assigned to the respective holders of the orders in full satisfaction of the claims due from Jackson to them, or to be held as security for the payment of such claims.

In the case of *Fortunato v. Patten*, 41 N. E. 572, the court of appeals of New York held that an equitable assignment of a chose in action, absolute in terms, but which was in fact executed as collateral security for a loan, was good as against a subsequent assignee without notice, and without notice to the debtor. The holders of these orders had the equitable title of the chose in action to the amount of their respective orders, and also had the constructive possession, and no one could acquire any interest from Jackson therein after the execution and delivery of the orders; and particularly so after the transfer had been brought home to the county by filing

the orders with the county clerk, which would preclude it from making payment to any one other than the parties holding the orders, or their assignees.

We come now to a consideration of the right of Jackson to set up the items included in the orders to Murphy, Carroll & Brough, Tinklepaugh and Young (assignee of Jones) in his counter-claim, as an off-set against the suit of the county against him, and as to whether a judgment could be rendered in his name after the execution and delivery of such orders. The title of the chose in action, as heretofore stated, was vested in the parties holding the orders to the amount thereof, and they were the real parties in interest to that extent. Doubtless, under our statute, they could have each maintained an action against the county thereon, unless the county had objected to the division of the entire chose in action on account of the multiplicity of suits which might be occasioned thereby. Neither these parties, however, nor either of them, commenced any action but permitted Jackson to set up the items included in such orders as a counter-claim to the suit of the county against him. The holders of the orders entered no protest against Jackson, including the amount of their orders in his suit against the county, and did not even advise the attorneys representing Jackson in that suit that they had any interest in such accounts or claims; and, so far as we learn from the findings of fact, they may have said nothing to Jackson with reference to such items. Jackson knew, however, that these items which he had included in his counter-claim were the property of the persons holding the orders. He, under the law, was bound to establish the validity of such account, and to show that the county was indebted to him for the amount of the same; and the

parties holding the orders had a right to presume that Jackson would truthfully and fully state the facts relative to the matter in controversy to his attorneys. The county had notice of the assignment of these items, but failed to plead such assignments in that controversy. Having failed to plead the assignments referred to above, after notice, it is possible that it would be still liable to the parties holding the orders had they not commenced the present suit, and sought to reach the fruits of the judgment recovered by Jackson against it; but, as all of the parties were before the court in this litigation, it might be said that the judgment in this suit would be *res judicata.* This, however, we do not decide. The question presented to us under the circumstances and under the findings of facts in this case is, who is the owner of the judgment rendered against the board of county commissioners, and in favor of Jackson? If the chose in action, to the amount of the orders, was not the property of Jackson when he filed his counter-claim, and was not his when judgment was rendered, can the judgment obtained on the items included in such orders be the property of Jackson, simply because he brought the suit in his own name, and recovered judgment on his counterclaim? We think not. The items assigned to Tinklepaugh *et al.* by the orders were, in equity, theirs. They had a right to the money derived therefrom, and, having that right, equity will grant them the proper relief; and Jackson is in no position in a court of equity to insist that he have the entire judgment, or that it be given to one to whom he had conveyed, after his conveyance of the chose in action on which the judgment was founded to other parties.

Now, what are the rights of Gillette & Libby? They claim the judgment in this case by virtue of an assignment of the entire chose in action upon which the judgment was rendered, after the amounts represented by the orders had been assigned to Murphy, Carroll & Brough, Tinklepaugh, and Young, and after the orders had been filed with the county clerk. They could acquire no greater right or interest in the chose in action than Jackson had at the time he assigned such claims to them. In other words, Gillette & Libby took the chose in action subject to all existing equities of every other person therein. See 1 Pars. Cont. p. 229, sec. 3: "We have seen that an assignee of a chose in action takes it subject to all the equities of defense which exist between the assignor and the debtor. The assignee does not take a legal interest nor hold what he takes by a legal title; but he holds by an equitable title an equitable interest, and this interest courts of law will protect only so far as the equities of the case permit, and any subsequent assignee is subject to the equities of his assignor." When Gillette & Libby received the assignment of this chose in action from Jackson, it was their duty to ascertain from the county what equities Jackson had to assign, and whether it had had actual notice of any previous assignment. It might be said, under the record in this case, that, even if Gillette & Libby had made inquiry of the county as to what it owed Jackson, it would have denied any liability to him; yet these items were in controversy, and the county had been previously notified of the execution and delivery of these orders; and it is to be presumed that had it been asked as to any assignment of the claim, it, through its proper officers, would have answered truthfully.

The court of appeals of New York, in the case of *Fortunato v. Patten,* 41 N. E. 572, in passing upon the question of assignment of a chose in action, used the following language: "This being so, he comes within the rule laid down by this court, to the effect that, as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, although he has given no notice of such assignment to either the subsequent assignee or the debtor,"—citing *Fairbanks v. Sargent* (N. Y. App.) 9 N. E. 870, 22 N. E. 1039, and *Williams v. Ingersoll,* 89 N. Y. 508.

It is stated in Drake on Attachment, in section 527, that "an equitable assignment will secure property against attachment for the debt of the assignor, though no notice be given, prior to the attachment, to the person holding the property, if it be given in time to enable him to bring it to the attention of the court before judgment is rendered against him, as garnishee. *

* So, a judgment obtained in the name of A., to the use of B., is not attachable in a suit against A."

In *Sutherland v. Reeve* 38 N. E. 130, the supreme court of Illinois say: "A second assignee of a chose in action takes it subject to any equities between the original owner and the first assignee."

Many authorities could be cited sustaining the proposition that one to whom a chose in action is assigned takes it subject to all existing equities at the time of such assignment. If this be true, then the rights of Murphy, Carroll & Brough, Tinklepaugh, and Young, and the rights of each and every one of them, were prior and superior to the rights of Gillette & Libby under their assignment from Jackson.

The findings of fact in this case disclose that Gillette & Libby learned of the assignment or the execution of these orders by Jackson to the defendants in error after the filing of the report of the referee, and before final judgment. Therefore, at the time the judgment was rendered in this case, they had full knowledge of the equities of the defendant in error. With this knowledge, can it be said that, by virtue of their attorney's lien filed after judgment, or by virtue of the assignment of the judgment after the rendition of the same, they acquired any interest in the judgment which was prior or superior to the interests of the parties holding the orders? Surely not. They do not even occupy the position of an innocent purchaser. They had knowledge of these assignments before judgment, and filed their liens with full knowledge of the same; and, having this knowledge, it cannot be said, on any hypothesis, either legal or equitable, that they should be preferred to the parties to whom Jackson had assigned the account or claims on which judgment was rendered. Under the record in this case, we also think that they are in no position to claim under their assignment, because by filing their attorney's lien they virtually admit that the judgment was not theirs, but debolnged to some one else. Their claims under the assignment and under their attorney's lien are inconsistent; and, having filed their lien after judgment, the assignment having been executed before judgment, the law presumes that they waive the assignment, and claim under their lien. It has been repeatedly decided that an attorney's lien after judgment will not take precedence over an assignment of either the chose in action or the judgment rendered thereon, executed prior to the filing of the lien.

—8

The findings of fact in this case disclose that it was agreed by and between Jackson and Gillette & Libby that they (Gillette & Libby) were to have the proceeds of whatever judgment might be recovered against the county in that suit, but, if Jackson failed to recover an affirmative judgment against the county, Gillette & Libby were to receive no compensation for their services. It is contended that this agreement gave them the right to any judgment recovered in that case. Could such a contract or agreement give them any interest in the sub-ject-matter of the litigation? We hold that it could not.

In the case of *Hull v. Culver*, 32 N. E. 265, the supreme court of Illinois laid down the law as follows: "An agreement by a client to pay his attorney a reasonable compensation for his services, to be paid out of the proceeds of a proposed lawsuit, does not amount to an equitable assignment of an interest in the subject-matter of the litigation, or give the attorney a right to intervene in the suit."

It is contended by plaintiffs in error that the trial court erred in its findings of fact, and also in its refusal to make certain other findings requested by appellants. After examining the record, we conclude that the evidence reasonably supports the facts found by the trial court, and cannot discover any error in the court's refusal to make the special findings requested by plaintiffs in error.

This disposes of all questions of law presented by the plaintiffs in error, except the question as to the correctness of the judgment and order of distribution of the trial court. The court found that it was by virtue of the labor of Gillette & Libby, as attorneys for Jackson, that

the judgment was recovered, and the indebtedness from the county to Jackson established. The court also found that the services of Gillette & Libby were reasonably worth the amount of their claim of $700, for which they filed their attorney's lien. It also found that the items for which the orders were executed to Murphy, Carroll & Brough, Tinklepaugh, and Young, assignee of Jones, were included in the judgment of $588.16 rendered against the county, and in favor of Jackson. The court, in its final order for distribution of the fund, held that, inasmuch as the items included in the orders given by Jackson to Murphy, Carroll & Brough, Tinklepaugh, and Young, assignee of Jones, were included in Jackson's judgment against the county, said Murphy, Carroll & Brough, Tinklepaugh, and Young were the equitable owners of the judgment so rendered, to the amount of their respective orders; but inasmuch as such claims had been established, and judgment recovered through the labor and skill of Gillette & Libby, as attorneys in that case, that they each pay out of their respective claims to Gillette & Libby, 25 per cent. thereof, and that Gillette & Libby, under their contract with Jackson, should have the remainder of such judgment. This decree and order of the trial court, we think, was reasonable and just. While the court found as a fact that the services of Gillette & Libby in that case were reasonably worth the sum of $700, it must be remembered that they not only prosecuted the claims for which this judgment was rendered against the county, but defended Jackson in a suit involving over $3,000; and, as the trial court did not find in express terms what part of the attorney's fees would be a reasonable proportion for the parties holding the orders to pay, we think it fair to conclude that it consid-

ered 25 per cent. of the respective claims a reasonable attorney's fee for prosecuting their part of the action against the county therefor. An attorney's fee of 25 per cent. of the amount recovered is under these circumstances, we think, a reasonable fee. It was admitted by the plaintiffs in error in this suit, that, at the commencement of this action in the district court, they were each insolvent, and not responsible in damages to the defendants in error. Having found that the defendants in error, Murphy, Carroll & Brough, Tinklepaugh, and Young are the equitable owners of the judgment in controversy, to the amount of their orders, we must also decide that the injunction was properly granted. Our examination of the record in this case, and of the briefs of the respective parties to this suit, fails to disclose any error by the trial court.

For the reasons herein stated, the judgment of the lower court is hereby affirmed. The costs of this appeal will be taxed to the plaintiffs in error. The clerk of this court will issue a mandate to the court below in conformity herewith.

Tarsney, J., having presided in the court below, not sitting; all the other Justices concurring.