## VORIS v. ROBBINS.

No. 5650. Opinion Filed September 21, 1915.

Rehearing Denied December 7, 1915.

(153 Pac. 120.)

1. **APPEAL AND ERROR—Necessary Parties.** If the status of a party become so fixed in the trial court that no action of the appellate court, whether it be an affirmance, modification, reversal or dismissal of the case on appeal, can then or thereafter affect or change the status of the party as fixed by the trial court, then he is not a necessary party on appeal.

2. **GUARDIAN AND WARD—Purchase of Land—Res Judicata—Records of County Court—Action by Vendor.** The county court made an order authorizing a guardian to purchase a tract of land with funds belonging to his ward, and a warranty deed therefor was taken in the name of the ward. The vendor afterwards sued to have the deed declared an equitable mortgage. **Held,** the vendor was not conclusivly bound by the records of the county court in the action instituted by him to have the deed declared a mortgage.

3. **APPEAL AND ERROR—Findings—Evidence.** (a) In an equitable action the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence.

(b) The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence.

4. **MORTGAGES—Security Deed—Intent of Parties—Existence of Debt.** (a) Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test. This intention is to be gathered from the circumstances attending the transaction and the conduct of the parties as well as from the face of the written contract.

(b) Before a deed can be declared to be an equitable mortgage, there must exist a debt, which must be personal in its nature and enforceable against the person independent of the security.

(c) Evidence examined, and **held** sufficient to sustain a finding that a deed was intended by the parties to be an equitable mortgage.

(Syllabus by Mathews, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by Henry Robbins against Cora Voris. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. A. Chase,* and *W. J. Campbell,* for plaintiff in error.

*W. D. Humphrey,* for defendant in error.

Opinion by MATHEWS, C. This was an action to have a deed declared to be a mortgage. It appears in the

evidence that on December 30, 1908, the plaintiff, Henry Robbins, made a warranty deed to the land in controversy, which was the Indian allotment of the plaintiff, to Alice Robbins, his mother. No consideration passed for this transfer, but, for some reason undisclosed by the evidence, it was conveyed to her to be held in trust for the plaintiff; he being at that time a minor.

The defendant, Cora Voris, is the married sister of the plaintiff, and John A. Kidd was her guardian; she being a minor. Quite a sum of money, belonging to the defendant, had accumulated in the hands of said guardian, and on the 12th day of October 1909, the said Alice Robbins conveyed the premises in controversy to the defendant by warranty deed for a consideration of $2,000. On the 16th day of October, 1909, the plaintiff and his wife executed a quitclaim deed to the same property to the defendant for the consideration of $2,000.

John A. Kidd, the guardian of defendant, having filed his petition in the county court of Nowata county asking permission of that court to purchase the land in controversy for defendant out of her funds in his hands for a consideration of $2,000, on the 12th day of October, 1909, the court made an order granting the said guardian permission to purchase the said land for defendant. Following, and on the said 12th day of October, 1909, the said guardian filed a statement with the court that he had purchased the land as authorized for the defendant, and on the same day the court entered an order ratifying and confirming said purchase.

Plaintiff contends that, at the time he executed the deed to his mother and the quitclaim deed to the defendant, he was a minor, and further contended that the war-

22—52

ranty deed made by his mother to defendant and the quit-claim deed made by himself and wife to defendant constituted a mortgage, and that the consideration of $2,000 mentioned therein was a loan which was to be repaid and the premises reconveyed to him; while defendant contends that at the time plaintiff made the quitclaim deed he had reached his majority, and that the conveyances both of plaintiff and of Alice Robbins were absolute deeds, and that the $2,000 was not a loan, but the purchase price for said land.

The action, being one in equity, was tried before the court, who made a finding of facts and gave judgment for plaintiff as prayed for, holding that the conveyances last aforesaid named were equitable mortgages. It appearing at the trial that the land in controversy had oil-producing wells thereon and that the National Refining Company then had on hand the sum of $3,135 due for royalties on oil received from the land in controversy which they were offering to pay over to the proper party as the court might direct, the court directed that out of this fund the defendant be paid the sum of $2,000, with interest at ten per cent per annum from October 12, 1909, and granted a decree conceling the deeds in controversy. The defendant's motion for a new trial having been overruled, she has appealed to this court and presents the following assignment of error:

"The judgment of the court is not supported by the evidence and is contrary to both the evidence and the law."

1. The first proposition to receive our attention is the contention of defendant in error that the appeal should be dismissed for the reason that Alice Robbins has not been made party to the appeal. She was made a party defendant in the lower court, and in her answer alleged that the

deed from plaintiff to her was executed without considera-
tion and was not intended to pass the equitable estate in
and to the premises involved, and that she took the deed
in her name to hold the property in trust for plaintiff, and
answered further that she claimed no right, title, or in-
terest in and to the said premises.

The test as to whether or not one is a necessary party
to the appeal is clearly laid down in the case of *Gillette
& Libby v. Murphy, Carrol & Brough et al.,* 7 Okla. 91,
54 Pac. 413. That case holds that even though one be
made a party in the trial court, yet if his status becomes
so fixed in the trial court that no action of the appellate
court, whether it be an affirmance, modification, reversal,
or dismissal of the case on appeal, can then or thereafter
affect or change the status of the party as fixed by the
trial court, then he is not a necessary party on appeal.

Applying that test to the status of the said Alice Rob-
bins, it is quite apparent that her interest can be affected
in no way, no matter what action this court may take on
this appeal. She sets out in her answer that she holds
the title to the land in controversy in trust for the said
plaintiff, Henry Robbins, and that she gave no considera-
tion for the deed made to her, and then states that "she
claims no. right, title, or interest in and to the premises
in controversy." This aspect appearing, she has no claim
in the land to protect, no obligation to defend, and no
concern in the decision of this court or the further action
of the trial court, should the judgment of the lower court
be reversed and remanded. If this appeal should be af-
firmed, then defendant would have no claim upon the said
Alice Robbins upon her warranty, because an affirmance
would be a judicial determination that the deed was a
mortgage only, and therefore the defendant could have no

grounds to urge a breach of the warranty, and, if the judgment of this court should be for the defendant, then the said defendant would have gotten all she claims she bargained for, which was an absolute warranty deed, and, if the case should be reversed and remanded for a new trial, these exact conditions would appear there upon a retrial. No matter what action the lower court might take on a retrial, the interest of the said Alice Robbins could not be affected. *Love v. Cavett,* 26 Okla. 179, 109 Pac. 553; *Zeimann v. Bennett,* 39 Okla. 344, 134 Pac. 1124; *Seibert v. First Nat. Bank,* 25 Okla. 778, 108 Pac. 628; *Southern Pine Lbr. Co. v. Ward,* 16 Okla. 131, 85 Pac. 459; *Kansas Pacific Ry. Co. v. McBratney,* 10 Kan. 415; *Whitford v. Horn,* 18 Kan. 455; Burdick on New Trials and Appeals, section 174; *De Bolt v. Farmers' Exchange Bank,* 46 Okla. 258, 148 Pac. 830.

2. The plaintiff in error claims that the evidence measured by every test prescribed in determining whether or not an instrument, which shows upon its face to be an absolute deed, is to be held as an equitable mortgage, falls far short and fails to sustain the findings of the trial court thereon.

The evidence in this case is so brief that we set out the same in full:

"Alice Robbins, being first duly sworn, and examined on behalf of the plaintiff, testified as follows:

"Direct examination by Mr. Humphrey: Q. Your name is Alice Robbins? A. Yes, sir. Q. Where do you live? A. Two and three-quarters of a mile northeast of Delaware. Q. What relation are you to Henry Robbins? A. His mother. Q. What relation are you to the defendant, Cora Voris? A. Her mother. Q. Do you recollect that some time in December, 1908, Henry made you a

deed to his allotment? A. Yes, sir. Q. What did you pay him for it? A. Nothing at all. Q. It appears that some time in October, 1909, you made a deed to your daughter, Cora; is that true? A. Yes, sir. Q. Relate the circumstances under which that was made. A. I made the deed to her, and Mr. Kidd made a deed for Henry— Mr. Campbell: Defendants object for the reason that the records of the county court of Nowata county in the matter of the guardianship of Cora Voris are pleaded by the defendant and admitted by the plaintiff, and that the same are conclusive and binding upon the matter of this transaction and upon all parties who have personal knowledge of the proceedings in this guardianship matter, and who participated in such proceedings, and that the same cannot be in any wise contradicted by any testimony of any person prior to the time of making these records. The Court: Overruled. To which ruling of the court defendants except. A. Well, Henry was needing some money, and he telephoned me to get Mr. Kidd to make him a loan, or rather we would make a sale of this land giving Cora a deed with the consideration that when Cora got her amount of money she was to deed this back to Henry, and she was always willing to do so, and before she was married she asked me to go with her to Lenapah and make a written statement to this effect, and I asked her if it would be necessary and would she rob her brother, and she said, 'No, mamma, I wouldn't.'

"Cross-examination by Mr. Campbell: Q. The understanding was it was to be a sale? A. Yes, sir; and later she was to deed it back. When she got her sum of $2,000 with good interest, she was to deed it back. Q. You talked it over with Mr. Kidd? A. Yes, sir. Q. Were you present when the matter was submitted to the county court? A. No, sir. Q. Where were you when you made the deed? A. In Nowata. Q. Who did you go to to make the deed? A. I don't remember. I think Mr. Humphrey, but he doesn't remember. Q. Mr. Kidd was doing some work down in this guardianship matter at the same time? A.

I don't know.  Q. How long were you in the office?  A. I can't say.  Q. Give your idea.  A. I can't give a definite idea.  Q. Did you sign any more than the one paper?  A. No, I don't think I did.  Q. Did Mr. Kidd sign any papers in your presence there?  A. I can't say for sure.  Q. Was Henry present?  A. No, sir.  Q. Where did he sign it? A. At Lenapah.  Q. Were you present when he signed the quitclaim deed?  A. No, sir.  Q. Did his wife sign it? A. Yes, sir.  Q. Where was he paid the $2,000?  A. The money was deposited in his bank.  Q. You never got anything?  A. No, sir; I didn't.  Why did I need to have it? Q. When he signed and when this money was deposited in his credit, was that before or after you came to Nowata?  A. It was afterwards.  Q. Just afterwards, wasn't it?  A. Yes, sir.  Q. Well, Cora is not on friendly terms with the family?  A. Well, I spent Sunday evening with Cora.  Q. Your family is not very friendly with her husband?  A. They would be if he would let them.  Q. Isn't there considerable hard feeling between your family and Cora's husband?  A. There is now.  His little child come to me—  Q. This trouble didn't arise until after Cora's marriage?  A. Not until he got mad with the family.  I don't know why he got mad, and what he got mad at Henry for no one knows.

"Redirect examination by Mr. Humphrey:  Q. The deed which you made on October 12, 1909, appears to have been acknowledged before W. J. Campbell, notary public? Mr. Campbell:  And W. J. Campbell was called into Humphrey's office.  Q. Do you recollect anything about being before him?  A. It seems to me, Mr. Humphrey, since you mention it, that I did; I went up there.  All I ask is justice to my two children.  I don't know why Garner Voris ought to rob my boy.

"Witness excused.

"Henry Robbins, the plaintiff, being first duly sworn and examined in his own behalf, testified as follows:

"By Mr. Humphrey: Q. Your name is Henry Robbins? A. Yes, sir. Q. And Alice Robbins is your mother? A. Yes, sir. Q. What relation are you to Cora Voris, nee Robbins? A. Sister. Q. Henry, the records show that on December 30, 1908, you made your mother a deed for your allotment. What did you get out of it? A. Nothing. Q. Now, it appears that in October, 1909, you and your mother had a transaction with Cora Robbins, through her guardian, John Kidd. Tell the court what you know about that. Mr. Campbell: We object for the reasons stated on the testimony of other witness. The Court: Overruled. To which ruling of the court defendants except. A. I called mamma over the 'phone from Coffeyville and asked her if she would get Mr. Kidd to loan me $2,000. Mr. Chase: We object to the conversation between him and her. The Court: Overruled. To which ruling of the court defendants except. A. I asked her to see Mr. Kidd and see if he would loan me $2,000 of Cora's money, and he did. Q. The records show you made a quitclaim deed? A. I did. Q. What did you make it for? A. To get the money. Q. Where did you make it? A. I signed it at Lenapah. Q. What was said about this being a sale at— give the court what your understood about it at the time you had this transaction. Mr. Chase: Object. Let him tell what was said. The Court: Overruled. To which ruling of the court defendants except. Q. Tell all about it, Henry. A. Well, they drawed up some papers and asked me to sign them, and I signed them, and in a few days I got the money, and it was my understanding the deed was to act as a mortgage.

"Cross-examination by Mr. Chase: Q. Tell what was said, what did you say to Kidd, and what did he say to you? A. He asked me to sign that paper, and he would pay the money. Q. He asked you to sign a deed, and he would pay you the money? A. I was under the impression it was a mortgage. Q. He asked you to sign the deed and he would give you the money? A. He asked me to sign the paper. Q. When was this money to be paid back?

A. Whenever the royalty paid it with interest. Q. And if royalty never run it was never to be paid back? A. She was to hold the land as security. Q. What did Kidd say to you? A Nothing, only what I told you. He told me to sign the paper and he would give me the money. Q. Now, what else? A. In a few days I got the money. Q. You signed it, and that's all that was said? A. All I remember that was said.

"Witness excused."

The foregoing was all of the oral testimony offered at the trial, and the only documentary evidence introduced was a copy of the Cherokee enrollment record of Henry Robbins, the plaintiff, and copies of the records of the county court in regard to the purchase of the land in controversy, by John A. Kidd, as guardian for the defendant, and copies of the deeds in controversy.

John A. Kidd, guardian, filed an application with the county court to purchase the land in controversy for his ward, the defendant, and, being duly so authorized by the court, took the deeds in controversy and paid over the said $2,000 to the plaintiff. The court's order was to "purchase" the land in controversy, and the court afterwards confirmed the action of the guardian in so doing. Plaintiff in error's contention thereon is set out in her language as follows:

"The judgment is contrary to both the law and the evidence because this action is an attempt to impeach the proceedings, records and judgment of another court of record in a matter over which it had jurisdiction, in a collateral way, and that the records of the county court, pleaded by plaintiff in error, preclude the defendant in error from the relief he seeks, so long as those records and the judgment contained therein are unreversed and not set aside. * * * This action is an effort to avoid the force and effect of the proceeding and judgment in the

county court by obtaining another and independent judgment which will destroy the effect of the judgment in the county court, and therefore a collateral attack upon the former judgment. * * *."

Plaintiff in error cites the following authorities in support of her contention: Woerner on Guardianship, section 54; *In the Estate of Decker*, 37 Misc. Rep. 537, 76 N. Y. Supp. 315; *Schmidt v. Shaver*, 196 Ill. 108, 63 N. E. 655, 89 Am. St. Rep. 250, and the authorities there collated.

We quote with approval the argument submitted in his brief by defendant in error in opposition to the foregoing contention of plaintiff in error, and we think the same successfully answers every point raised by plaintiff in error.

"These decisions [cited by plaintiff in error] all discuss matters arising out of probate proceedings, and in each instance the court will find that the matter under consideration is a sale authorized by the probate court. This is a different matter from a purchase permitted and approved by the probate court. The title to premises sold in probate proceedings depends upon the validity of the proceedings, whereas, a title purchased by a minor, though under a guardian in probate, in no way depends upon any proceedings whatever, but, on the other hand, depends solely upon the capacity of the grantor selling to such minor.

"An unauthorized purchase by a guardian for his ward would, no doubt, divest the vendor of title, and for the time being vest title in the ward, and thereafter, if the probate court refused to ratify the expenditure and the guardian had to stand the purchase price, the ward would, as a matter of law, become a trustee of the legal title for his guardian, but the original vendor by acceptance of the purchase price and the execution of the deed would be divested of his title.

"It seems therefore that, since Alice Robbins could have made a conveyance to Cora Robbins either with or without the sanction of the county court, the proceedings in no way affected the rights of Henry Robbins. The land of Henry Robbins, as heretofore stated, was not a part of the estate under guardianship, and therefore not under the jurisdiction of the probate court; and hence in a proceeding wholly between Alice Robbins and John A. Kidd, guardian, so far as the probate records show, there is nothing to bind Henry Robbins so as to preclude him from asserting the true character of the transaction between himself and John A. Kidd, guardian.

"There was no probate proceeding involving the immediate acts between Henry Robbins and John A. Kidd, guardian. Henry Robbins was dealt with on the theory that he was *sui juris,* and that the court had nothing to do with his end of the transaction, and as a matter of law we assert that this is true, and that the probate court had nothing to do at the time, and now has nothing to do, with the transaction.

"The matter of approving or disapproving a sale by an * * * adult to a minor is wholly extrajudicial as to the vendor, and is effective only as a matter of supervision and accounting among the guardian, the ward and the court."

3. The trial court made the following finding of fact:

"That on October 12, 1909, when Alice Robbins conveyed the land in controversy, to her daughter, Cora Robbins, the conveyance was made by her in order to secure a loan to be advanced by Cora Robbins, now Cora Voris, to Henry Robbins, and that said conveyance, and also the quitclaim deed made by Henry Robbins, operated only as a mortgage for the security of the $2,000 borrowed on October 12. 1909."

Plaintiff in error contends that the evidence does not support this finding. This being an equitable action, the

finding of the lower court should be sustained unless it appears that his finding is clearly against the weight of the evidence. *Schock v. Fish*, 45 Okla. 12, 144 Pac. 584; *Tucker v. Thraves*, 50 Okla. 691, 145 Pac. 784. While in equity actions the appellate court should weigh the evidence, yet it should still be guided by the conclusion of the trial court, unless it be manifest that the trial court reached the wrong conclusion.

The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence.

Not only must we say that the finding aforesaid is not clearly against the weight of the evidence, but the only evidence we have in the case which was given by the plaintiff and his mother was to the effect that the conveyances to the defendant were intended as a mortgage. No attempt was made to deny or explain this testimony, and it stands uncontroverted. Mr. Kidd, the guardian, is one person who knew whether or not many of the statements made by plaintiff and his mother were true, and he was not produced as a witness to deny these statements, nor is his absence explained.

Of course, it is manifest that the defendant herself could know but little about the main transaction, as she was a minor at that time, and the business was transacted by her guardian; hence her failure to testify should not be taken against her except in one instance. Her mother testified that, before the defendant was married, she was always willing to deed the land back to plaintiff when she got the amount of money due her by plaintiff, and that

she, the defendant, before she was married, asked her, the witness, to go with defendant to Lenapah that she might make a written statement to that effect. These statements were damaging and went a long ways to prove plaintiff's case, and, if they were not true, defendant was fully cognizant of that fact, and had no right to remain silent in the face of such testimony brought home to her, and now be heard to say on appeal to the effect that the testimony of her mother was untrue on that point. As far as the record shows in this case, the mother of these two litigants appears as an unbiased witness. If she has any interest in the results of the trial, the evidence does not disclose it, and, until something has been developed to discredit her testimony, it should be given weight and effect. In the absence of great prejudice or interest, neither of which is apparent in this case, this court cannot believe that any mother would deliberately give false testimony against her daughter, and we are disposed to here accept the testimony of Mrs. Robbins at full face value.

4. The only serious question we meet in this case is, accepting plaintiff's testimony as true, will the facts as therein disclosed justify the court in reaching a conclusion that the deed was in fact an equitable mortgage.

It is difficult to lay down an arbitrary legal test and say that in every instance this shall be the gauge whether or not an instrument, showing on its face to be a deed, shall be declared to be such in fact or an equitable mortgage only. Further, even though the proper legal test be conceded, when we come to apply this test to a given state of facts, we are confronted with even a more difficult and complex legal problem.

In the case of *Weiseham v. Hocker et al.*, 7 Okla. 250, 54 Pac. 464, it is said that the intention of the parties shall be the guiding rule and the infallible test, using therein the following language:

"Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test. This intention is to be gathered from the circumstances attending the transaction and the conduct of the parties, as well as from the face of the written contract."

In the case of *Worley v. Carter et al.*, 30 Okla. 642, 121 Pac. 669, we find the same holding as follows:

"The real intention of the parties, either as shown upon the face of the writing, or as disclosed by extrinsic evidence, must govern in equity."

Having shown that the real intention of the parties must control, in the natural sequence follows the question: In what way shall we arrive at their real intention, and what test shall be applied in coming to a definite conclusion thereon?

In the well-considered and exhaustive case of *Worley v. Carter et al.*, *supra*, which was upon the exact point now under consideration, there was quoted with approval the case of *McNamara v. Culver*, 22 Kan. 668, as follows:

"The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a security, and the collection of which may be enforced independent of the security, equity will hold it a mortgage, no matter whether the transaction is evidenced by one or two instruments."

In the case of *Rushton v. McIllvene,* 88 Ark. 299, 114 S. W. 709, is laid down the following:

"The sure test and the essential requisite are the continued existence of a debt. If there is no indebtedness, the conveyance cannot be a mortgage. If there is a debt existing, and the conveyance, was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage." *Fabrique v. Mining Co.,* 69 Kan. 733, 77 Pac. 584.

That is the accepted test in this state—that in order to find a deed to be an equitable mortgage there must exist a debt, which must be personal in its nature and enforceable against the person independent of the security. Do the facts in this case warrant the conclusion that the plaintiff owed the defendant the sum of $2,000 for borrowed money, which claim defendant could have enforced in a personal action? Undoubtedly yes, if the plaintiff and his mother would give the same testimony at such a hearing as they gave at this trial, which we must assume they would do.

Plaintiff testified that the defendant was to get interest on the loan. It is true he does not say what the rate of interest should be, and it is very probable that no rate was agreed on. It must be understood that this was a transaction within the family, and it is well known that quite often, in fact too often, members of a family in their negotiations with one another do not have those definite and certain agreements about every detail of the transaction to be expected in dealing with strangers, and in arriving at a decision in this case it has been given weight that this transaction was between immediate members of the family, and practically inexperienced children.

The evidence in this case going to show the value of the property in controversy is remarkable for its absence. It is one of the strongest *indicia* of the transaction, whether the amount of money obtained is out of proportion to the value of the property or more nearly of the same proportion. But there are facts appearing in the record which warrant the court in arriving at a conclusion that the land in controversy was very valuable at the time of the conveyance.

It is shown that the land was in the Delaware oil field and had four producing oil wells on it at the very time of the conveyance, and its value is further shown by the fact that, within a short time, an oil company held in its hands the sum of $3,135 due for royalties for oil produced from the land in controversy, and it is inferable from the evidence that the defendant or her guardian had also been paid some sum, which is not disclosed by the evidence, for royalties on oil from the same land.

It is a well-known and currently accepted fact that oil-producing lands are valuable, and land lying in proven fields, as this land lay at the time of the conveyance, even though undeveloped, has great value, although quite often more imaginary than real. From these facts we must conclude that the sum of $2,000 at the time of the transfer was a mere pittance of the actual salable value of the land in controversy, and so entirely out of proportion that we must give that fact great weight here.

It is true that the evidence shows that the defendant was given possession of the land in controversy, and this fact is entitled to be given weight in favor of defendant; but the giving of possession is not one of the controlling *indicia* and not an infallible test in cases like the one under

consideration. *Clark v. Woodruff*, 90 Mich. 83, 51 N. W. 357. The same principle will apply to defendant's contention that the competent evidence does not show any application or negotiation for a loan preceding or during the transaction. As said before, there is but one infallible test in such cases, and that is the existence or nonexistence of a debt enforceable as a personal obligation after the conveyance is made. While there are many other facts, the existence or nonexistence of which are entitled to consideration, none are controlling except the one above mentioned.

For the reasons given, we recommend that the judgment be affirmed.

By the Court: It is so ordered.